## NEW BUFFALO *v.* IRON COMPANY.

1. *Taylor* v. *Ypsilanti* (*supra*, p. 60) cited and approved.
2. An assignee of municipal bonds issued to a railroad company succeeds to its rights by virtue of its contract with the municipality, although at the time of the assignment the statute under which they were issued was declared by the Supreme Court of the State to be repugnant to the Constitution.
3. Bonds voted in aid of one company, which, under the law then in force, was subsequently consolidated with another company, may be delivered to the consolidated company.

ERROR to the Circuit Court of the United States for the Western District of Michigan.

The judgment below was for the amount due on certain bonds, with interest coupons attached, issued by the township of New Buffalo, in the county of Berrien, and State of Michigan, plaintiff in error, under the authority of a general statute of that State, approved March 22, 1869, conferring power upon townships, cities, and villages to pledge their aid, by loan or donation, with or without conditions, to any railroad company organized under the laws of that State, in the construction of its road. Sess. Laws Mich., 1869, p. 89. It is the same statute whose validity and construction were involved in *Taylor* v. *Ypsilanti*, *supra*, p. 60. The bonds were voted on the twenty-second day of May, 1869, as a donation in favor of the Chicago and Michigan Lake Shore Railroad Company, a corporation of Michigan, whose road-line commenced at the north line of the State of Indiana, in Allen County, running northwardly to the St. Joseph River, in the village of St. Joseph, Michigan, a distance

of thirty miles, passing through the township of New Buffalo. When the bonds were voted there was in force a general statute, under which any railroad company of the State, forming a continuous or connected line with any they railroad company, in or out of the State, could consolidate with the latter. The statute provided that such new corporation "shall possess all the powers, rights, and franchises conferred upon such two or more corporations, and shall be subject to all the restrictions and perform all the duties imposed by the provisions of their respective charters or laws of organization." Further : " All and singular the rights and franchises of each of said corporations, . . . and all and singular their rights and interests in and to every species of property and things in action, shall be deemed to be transferred to and vested in such new corporation without any other deed or transfer." Compiled Laws of Mich., 1857, sects. 1994, 1995, p. 653.

On the 3d of July, 1869, the Lake Shore Railroad Company of Western Michigan was organized, with authority to construct a road from the northern terminus of the before-mentioned road, at St. Joseph River, northerly to the mouth of the Muskegon River, a distance of ninety miles. By articles of agreement between the two companies, made on the 12th and 13th of July, 1869, and filed in the office of the secretary of state on the nineteenth day of July, 1869, the two companies became consolidated into a new corporation, under the name of the Chicago and Michigan Lake Shore Railroad Company.

On the day last named the bonds, having been executed on the 1st of June, 1869, were deposited in the office of the treasurer of state, who was required by the statute to " hold the same as trustee of the municipality issuing the same, and for the railroad company for which they were issued." The road was finished from New Buffalo to the village of St. Joseph as early as Feb. 1, 1870, and has been in operation ever since. On the fourth day of February, 1870, the governor of the State made his certificate, stating that the railroad company had constructed the road in compliance as well with the statute as with the conditions upon which aid had been voted by the people, and was, consequently, entitled to receive the bonds from the State treasurer. They were thereupon delivered to

the consolidated company, who held them until Nov. 4, 1874, when such of them as are here in suit were transferred to the Cambria Iron Company, defendant in error, in payment of antecedent debts due to it by the railroad company. Upon such transfer the company's acceptances theretofore given for its debts were surrendered and the debts discharged.

*Mr. Henry F. Severens* for the plaintiff in error.

*Mr. Mitchell J. Smiley, contra.*

Mr. Justice Harlan, after stating the facts, delivered the opinion of the court.

1. On behalf of the plaintiff in error it is contended that, by the settled law of Michigan as it existed when the bonds were issued, they were void. In support of that position we are referred to *People* v. *Salem*, 20 Mich. 452, decided May 26, 1870; *Bay City* v. *State Treasurer*, 23 id. 499; and *Thomas* v. *Port Huron*, 27 id. 320. This question was fully considered in *Taylor* v. *Ypsilanti* (*supra*, p. 60), where we ruled that by the law of Michigan, as expounded by its Supreme Court, and acted upon by its legislature and executive departments, prior to the decision in *People* v. *Salem*, bonds issued in conformity with the act of March 22, 1869, were valid obligations of the municipality by whom they were issued. For the reasons there stated the present objection cannot be sustained.

2. Equally untenable is the proposition that the rights and obligations of the parties are to be determined by the law, as expounded by the Supreme Court of the State, at the time the defendant in error, in fact, received the bonds. The defendant in error is a holder for value. *Railroad Company* v. *National Bank*, 102 U. S. 14. But if not, it is still entitled to whatever rights the railroad company had by virtue of its contract with the township. That contract was made and fully performed before the decision in *People* v. *Salem* was rendered, and, as already indicated, was not affected by the decision in that case.

3. Nor is it a material circumstance that this was a donation, and not a subscription of stock. In *Railroad Company* v. *County of Otoe* (16 Wall. 667), it was held that, in the absence of constitutional provisions making a distinction between mu-

nicipal subscriptions to stock and municipal appropriations of money or credit, there was no solid ground upon which, so far as legislative power was concerned, to rest such a distinction. " Both are for the purpose of aiding in the construction of the road; both are aimed at the same object, securing a public advantage, obtaining a highway or an avenue to the markets of the country ; both may be equally burdensome to the tax-payers."     *Olcott* v. *The Supervisors,* 16 Wall. 678; *Town of Queensbury* v. *Culver,* 19 id. 83.

4. The only remaining objection to the judgment is that the bonds were delivered to the consolidated company, when they were not voted to that company. We concur with the court below in holding that the aid voted must be deemed to have been given in view of the then existing statute, authorizing two or more railroad companies forming a continuous or connected line to consolidate and form one corporation, and investing the consolidated company with the powers, rights, property, and franchises of the constituent companies. *Nugent* v. *The Supervisors,* 19 Wall. 241; *County of Scotland* v. *Thomas,* 94 U. S. 682 ; *Town of East Lincoln* v. *Davenport,* id. 801; *Wilson* v. *Salamanca,* 99 id. 499 ; *Empire* v. *Darlington,* 101 id. 87 ; *Menasha* v. *Hazard,* 102 id. 81 ; *Harter* v. *Kernochan,* 103 id. 562 ; *County of Tipton* v. *Locomotive Works,* id. 523. The bonds were, therefore, rightly delivered to the new or consolidated corporation.

*Judgment affirmed.*

MR. JUSTICE GRAY did not sit in this case, nor take any part in deciding it.