BUTLER, APPELLANT, *v.* ANDRUS ET AL., RESPONDENTS.

| 35 | 575 |
|----|----|
| f39 | 98 |

(No. 2,453.)

(Submitted June 25, 1907. Decided June 29, 1907.)

[90 Pac. 785.]

*Municipal Corporations—Indebtedness—Limitations—Bond Issues—Constitution.*

Municipal Corporations — Indebtedness — Limitations — Constitution — Bond Issues.

1. The three per cent limit of indebtedness which, under section 6, Article XIII of the Constitution, a city could contract was $37,998.30. Of this amount, $17,000 had been consumed in a bond issue for water and light purposes. Subsequently a further issue of $10,000, for water supply purposes, was made and declared to fall within the ten

per cent extended limit, authorized by Act of 1897 (Laws 1897, p. 203), under certain conditions. Later an issue of $10,000, for improvement of the city's electric light plant and consolidation of it with its waterworks plant, was voted, such issue to fall within the three per cent limit.    In addition to its bonded indebtedness the city had a floating debt of $1,500.    *Held,* under the constitutional provision and Act above, that a city may not resort to the ten per cent extended limit of indebtedness, until its financial condition and the needs of the people have created the necessity for such action, and that, therefore, the city in question had no authority to arbitrarily declare the second bond issue of $10,000 for water supply purposes, within the extended limit so long as there was ample margin within the constitutional limit to cover such issue; *held,* further, that after placing these bonds within the three per cent limit and adding to it the first issue of $17,000 and the floating debt of $1,500, the margin left to meet the latest proposed issue of bonds, amounting to $10,000, was insufficient, and hence the issue could not lawfully be made.

Same—Bond Issues—Legality.

2.   A city's arbitrary action in placing a bond issue within the extended ten per cent limit of indebtedness authorized, under certain conditions, by Act of 1897 (Laws 1897, p. 203), when there was sufficient margin within the constitutional three per cent limit to cover it, does not affect the validity of such bonds as a liability of the city.

Same—Constitutional Construction.

3.   The argument of *ab inconvenienti* cannot avail in the interpretation of constitutional provisions relative to the limitations placed upon the power of a city to contract indebtedness; the rule of strict construction must be applied, and any doubt as to such power must be resolved against it.

*Appeal from District Court, Custer County; C. H. Loud, Judge.*

ACTION by C. W. Butler against W. W. Andrus and others. From a judgment for defendants, plaintiff appeals. Reversed and remanded.

*Mr. Donald Campbell,* for Appellant.

*Mr. George R. Milburn,* for Respondents.

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

This action was brought by plaintiff, as a taxpayer, to restrain the defendant city and its officers from issuing and selling certain bonds of the city to the amount of $10,000, which, it is alleged, are about to be issued and sold for the purpose of provid-

ing funds for the "enlargement and improvement of the Miles City light plant and the consolidation of said plant with the Miles City waterworks plant," on the ground that said bonds are about to be issued and sold without legal authority.

It appears from the allegations of the complaint that during the year 1905 the city council, having theretofore been duly authorized by the electors at an election held for that purpose, issued and sold bonds of the city to the amount of $10,000 for water supply purposes; that the indebtedness thus incurred was declared to have been contracted under the extended limit of indebtedness of ten per cent of the assessed valuation of the property in the city, authorized by section 4800 of the Political Code, as amended by Act of 1897 (Session Laws of 1897, p. 203), enacted in pursuance of section 6, Article XIII, of the Constitution; that at the date of the issuance of the bonds the value of property in the city, as shown by the assessment of the previous year, was $1,266,610; that this valuation would authorize an indebtedness, within the three per cent limit provided in the Constitution, of $37,998.30; that the city had theretofore made two issues of bonds, one of $17,000 for water and light purposes, and a second one of $15,000 for water supply purposes exclusively; that the first had been declared to be indebtedness falling within the constitutional three per cent limit, and the second to be indebtedness under the ten per cent or extended limit provided for by the statute; that, deducting the debt of $17,000 from the gross amount which could be raised by a three per cent assessment upon the property in the city, there would be left unexhausted of the three per cent limit of indebtedness a margin of $20,998.30; that, notwithstanding this condition of the indebtedness and assets of the city, the council arbitrarily declared the indebtedness represented by the bonds, to the amount of $10,000 issued in 1905, to fall in the ten per cent limit and not within the three per cent limit, without submitting to the electors the question whether this should be done; that all of these bonds are now outstanding against the city and unpaid; that on June 24, 1906, the city council by resolution submitted

to the electors of the city the question whether there should be made a fourth issue of bonds for $10,000, to provide funds to enlarge and improve the electric light plant belonging to the city, the indebtedness contracted thereby to be in the three per cent limit; that at an election held in pursuance of the resolution on July 30, 1906, the electors signified their assent; that the council thereupon by ordinance provided for the issuance of the bonds so authorized, and is now proceeding to issue and sell the same; that on July 30, 1906, the total assessed valuation of the taxable property of the city was $1,266,610; that three per cent of this, or the gross amount of indebtedness the city could contract under this limit, was $37,998.30, of which there had already been exhausted $27,000, to-wit, by the issuance of water and light bonds, $17,000, and by the issuance of waterworks and consolidation bonds, $10,000, in 1905, which also properly came within the three per cent limit, leaving only $10,998.30, and no more, to be exhausted by the indebtedness contracted within this limit; and that, in addition to the bonded indebtedness mentioned, the city had a floating indebtedness of $1,500.

To the complaint the defendants interposed a general demurrer. This the court sustained, and, plaintiff having refused to plead further, judgment was entered in favor of the defendants. From this judgment plaintiff has appealed.

It will be noted that it is not apparent from the allegations of the complaint why the indebtedness represented by the second bond issue of $15,000 was declared to be in the extended or ten per cent limit. From the brief of counsel, however, we gather that, at the time these bonds were issued, the city being already indebted to the amount of $17,000 by the previous issue, the assessed valuation of the property in the city amounted to only $1,021,549. Under this condition of affairs, the $15,000 of bonds could not fall wholly within the three per cent limit. Hence no question is made here as to their validity. It is assumed by counsel for the plaintiff and the defendant both that they properly fall under the ten per cent or extended limit. It will be noted further, that in 1905, at the time the third issue

of bonds was made, there was a margin within the three per cent limit of $20,998.30. In order, however, to preserve this margin for other purposes, the council declared that issue as incurring an indebtedness under the ten per cent or extended limit.

It is insisted by counsel for plaintiff that this could not arbitrarily be done, but that, before the ten per cent limit could again be resorted to, this margin must have been exhausted or have become insufficient to cover the amount of that issue. It is further argued that, since the city council had no authority to pursue this course, the amount of that issue must be assigned to the three per cent limit, and since this is so, and since the issue of bonds now in controversy cannot, under the Constitution or the statute, fall within the ten per cent limit, because the indebtedness under that limit must be devoted exclusively to water and sewerage purposes, the proposed issue is invalid, because there is not margin enough under the three per cent limit to cover it.

The contention of counsel for defendants is that a city may incur indebtedness under the extended limit at any time it desires to construct a sewerage system or procure a water supply; that it was competent for the city to declare the issue of bonds in 1905 as made under this limit, thus preserving the margin still left under the three per cent limit for other purposes; and hence that the proposed issue will be valid.

Section 6, Article XIII, of the Constitution declares: "No city, town, township or school district, shall be allowed to become indebted in any manner or for any purpose to an amount, including existing indebtedness, in the aggregate exceeding three per centum of the value of the taxable property therein, to be ascertained by the last assessment for the state and county taxes previous to the incurring of such indebtedness, and all bonds or obligations in excess of such amount given by or on behalf of such city, town, township or school district shall be void; provided, however, that the legislative assembly may extend the limit mentioned in this section, by authorizing municipal corporations to submit the question to a vote of the tax-

payers affected thereby, when such increase is necessary to construct a sewerage system or to procure a supply of water for such municipality which shall own and control said water supply and devote the revenue derived therefrom to the payment of the debt."

Subdivision 64, of section 4800, Political Code, as amended by the Act of 1897, page 209, so far as it is pertinent here, provides: "That an additional indebtedness shall be incurred, when necessary, to construct a sewerage system or procure a water supply for the said city or town which shall own or control said water supply and devote the revenue derived therefrom to the payment of the debt. The additional indebtedness authorized, including all indebtedness heretofore contracted, which is unpaid or outstanding, for the construction of a sewerage system, shall not exceed ten per centum over and above the three per cent heretofore referred to, of the total assessed valuation of the taxable property of the city or town as ascertained by the last assessment for state and county taxes; and provided further, that the above limit of three per centum shall not be extended, unless the question shall have been submitted to a vote of the taxpayers affected thereby and carried in the affirmative by a vote of the majority of said taxpayers who vote at such election."

It is apparent that in enacting this provision the legislature intended to pursue strictly the provisions of the Constitution quoted. The purpose of the limitation in the Constitution is to prevent extravagance. Experience has demonstrated that those who control municipal governments are not always honest, discreet, and conservative citizens, and that, when there is no restraint upon their power to contract indebtedness, extravagant courses frequently result in imposing intolerable burdens of taxation upon the people of their municipalities. Such limitations have thus been found to be necessary, and are based upon the policy of paying as you go. They must, therefore, be so construed as to accomplish the desired end so far as possible. (1 Dillon on Municipal Corporations, sec. 130.) The courts

have generally applied the rule of strict construction, and, when there is doubt as to the power to contract the particular indebtedness, the doubt has been resolved against it. (1 Dillon on Municipal Corporations, sec. 130; Abbott on Municipal Corporations, secs. 140-151.)

The constitutional limitation in question is clear and unambiguous, and means just what it says, to-wit, that no indebtedness may be contracted in any manner or amount, for any purpose, in excess of the prescribed limit. (*State ex rel. Helena Waterworks Co.* v. *City of Helena*, 24 Mont. 521, 81 Am. St. Rep. 453, 63 Pac. 99, 55 L. R. A. 336.) .The proviso under which the legislature may authorize an extension of the limit is also clear in purpose, to-wit, to allow an extension of this limit when such extension (increase) is necessary to construct a sewerage system or procure a water supply. It cannot be granted or be made available for any other purpose nor under any other circumstances than those which create the necessity for it. The legislature in granting the privilege used the expression ''and an *additional* indebtedness shall be incurred when *necessary* to construct,'' etc. This language seems susceptible of but one construction. There may be no extension, if there is no debt already contracted, for the word ''additional'' qualifies the character of the debt to be contracted, and refers also to a pre-existing amount of indebtedness to which it may be added. The word ''necessary'' defines the condition of affairs which requires the additional indebtedness. The condition must be such as to create the necessity. If a municipality is not indebted in any amount at all, or if it has the necessary funds in its treasury, no *additional* indebtedness can be incurred; nor can it be said that any necessity has arisen demanding it. Otherwise, we are compelled to the conclusion that, whenever a city government has determined to construct a sewerage system or procure a water supply, this fact of itself creates the necessity by which the privileged extension is made available, without regard to the city's financial resources and its existing indebtedness, and without regard, also, to the neces-

sities of the people for a sewerage system or a water supply. This is the interpretation of the statute for which defendants contend; but, in view of the purpose of the limitation declared in the Constitution, and the terms employed in the statute, we think the only conclusion permissible is that the privilege of the extension becomes available only when the financial condition of the city requires a resort to it in order to serve the comfort or preserve the health of the people.

The amendment to section 4800 of the Political Code by the Act of 1897, *supra,* embodies the provision in question as it stood in the Code. In *Palmer* v. *City of Helena,* 19 Mont. 61, 47 Pac. 209, it was considered by this court; the question for its decision being whether the city of Helena, which had already become indebted to the full amount of three per cent of its assessed valuation, could refund its outstanding bonds, issued for sewerage purposes, and declare them to represent indebtedness contracted outside of the three per cent limit, thus leaving a margin within that limit for other purposes. This court held that this could not be done, for the reason that the city already had its sewerage system, and hence there was no necessity for it to resort to the extended limit. While the case before us has arisen out of conditions materially different from those appearing in that case, the principle controlling the decision of the latter is applicable to this case, and, we think, decisive of it, for that decision rests upon the principle that a city may not go beyond the three per cent limit in contracting indebtedness, until its financial condition and the needs of the people have created the necessity for doing so. The city of Helena had constructed its sewerage system by the use of funds derived from bonds issued within the limit. Here it appears that the defendant city in 1905, having then an ample margin within the limit to cover any indebtedness necessary to be incurred to supply the needs of the people at that time, arbitrarily declared the debt of $10,000 then incurred for the improvement of the water supply, to be in the extended limit, and that, too, as the sequel shows, for the purpose of enabling it to incur *additional* indebtedness

for other purposes. If financial necessity must exist before resort may be had to the reserve provided by the legislature, the city could not thus resort to it, for no such necessity existed.

We do not question the validity of the indebtedness represented by these bonds. We hold that it was properly incurred within the constitutional limit, and must be so classed among the liabilities of the city. · The fact that the people, if such were the case, or the city council, arbitrarily voted that the bonds should be classed under the ten per cent limit does not affect their validity as a liability of the city.

Add the amount of this issue and the floating debt, due on outstanding warrants at the present time, to the former issue of $17,000, and deduct this from the gross amount that can be raised upon the assessed valuation of the property in the city at three per cent, to-wit, $37,998.30, the margin left to meet the proposed issue of $10,000 is only $9,498.30. Since this margin is less than the amount of the proposed issue, the issue cannot lawfully be made. (*Jordan* v. *Andrus,* 27 Mont. 22, 69 Pac. 118.)

Counsel for defendant cites the cases of *State ex rel. O'Meara* v. *City Council,* 23 Utah, 13, 64 Pac. 460, *City of Los Angeles* v. *Hance,* 122 Cal. 77, 54 Pac. 387, and *Hazeltine* v. *Blake,* 26 Wash. 231, 66 Pac. 394, in support of his contention. While these cases somewhat fortify his argument, and indicate that, if the question now before this court had been before the courts in those decisions, a contrary conclusion would have been reached, we are of the opinion, however, that we are bound by the conclusion reached by our own court in *Palmer* v. *City of Helena, supra.* To say the least, that case lays down a wholesome rule, and fully effectuates the purpose of the limitation embodied in the Constitution. It may be that this conclusion will in some cases work an apparent hardship, as counsel says. If we are to be controlled in the interpretation of the Constitution by considerations of convenience or possible hardship, there is scarcely any provision of it which may not be rendered nugatory.

We think the court was in error in sustaining the demurrer. The judgment is accordingly reversed, and the cause remanded for further proceedings.

*Reversed and remanded.*

MR. JUSTICE HOLLOWAY and MR. JUSTICE SMITH concur.