STATE ex rel. GALLES, Relator, *v.* BOARD OF COUNTY
COMMISSIONERS et al., Respondents.

(No. 4,492.)

(Submitted October 25, 1919. Decided November 5, 1919.)

[185 Pac. 456.]

*Mandamus—Counties — Indebtedness — Constitutional Limit—
How Determined.*

Counties — Indebtedness — Determination by Board of Commissioners —
Effect.
    1.   The act of submission to the electors of a county, by its board of
commissioners, of the question whether an indebtedness in a given
amount should be incurred, was a determination by it that such amount,
together with outstanding indebtedness, would not exceed the limit of
indebtedness prescribed by the Constitution.

Same—Indebtedness—Constitutional Limit—How Determined.
    2.   Whether contemplated additional county indebtedness is within the
constitutional limit must be determined from a consideration of the
amount of it, the amount of existing indebtedness, and the amount fixed
by the Constitution as such limit.

    [As to claims against counties and the effect of allowance or rejec-
tion of such claims, see note in 55 Am. St. Rep. 203.]

Same—Limit of Indebtedness—How Determined.
    3.   *Quaere:* In determining the validity of additional county indebted-
ness, may money in the sinking fund or taxes imposed for the benefit of
the sinking fund and in process of collection be deducted from outstand-
ing indebtedness?

Same—What is Limit of Indebtedness.
    4.   *Held,* under section 5, Article XIII, of the Constitution, that the
limit of county indebtedness is five per cent of the value of its taxable
property as that value is disclosed by the last assessment-roll, *i. e.,* the
value fixed by the county assessor as equalized by the county and state
boards of equalization—the full cash value.

Same—County Clerk—Extension of Taxes—Ministerial Duty.
    5.   The duty cast upon the county clerk of extending the taxes upon the
proper books after the assessment-roll is completed is ministerial, in-
volving no more than a mathematical calculation.

Same—Limit of Indebtedness—How Determined.
    6.   *Held,* that the limit of county indebtedness is to be computed upon
the assessed valuation of its taxable property as disclosed by the last
assessment-roll, and not upon the percentages of values upon which taxes
are computed under Chapter 51, Laws of 1919.

Same—Indebtedness—Comes into Existence, When.
    7.   County indebtedness in excess of $10,000 comes into existence only
when the county becomes legally liable to pay it in whole or in part,
to-wit, when the bonds or warrants evidencing it are issued or binding
contracts are made, and not upon the favorable vote of the electors
on the question whether the indebtedness shall be incurred.

Same—Limit of Indebtedness—"Last Assessment-roll."

> 8. *Held,* that the last assessment-roll, within the meaning of section 5, Article XIII, of the Constitution, from which the limit of indebtedness of a county shall be computed, is the last complete roll before the debt is contracted (paragraph 7 above), and not the last assessment-roll in existence at the time the indebtedness was authorized at the polls.

Same—Additional Indebtedness—*Mandamus.*

> 9. *Held* that, where additional county indebtedness authorized by a favorable vote of the electors, together with existing indebtedness, did not exceed five per cent of its assessed valuation, it was the plain legal duty of the board of county commissioners to act under the authority thus conferred, and that *mandamus* lies to compel its performance.

Original application by the State at the relation of Frank Galles, for writ of mandate to compel the board of county commissioners of Hill County, Montana, to exercise authority conferred upon it by a favorable vote of the electors of said county to incur additional indebtedness under the provisions of Chapter 8, Laws of the Extraordinary Session of 1919.   Writ issued.

*Messrs. Norris & Hurd,* for Relator, submitted a brief; *Mr. Edwin L. Norris* argued the cause orally.

*Mr. S. C. Ford,* Attorney General, *Mr. Frank Woody,* Assistant Attorney General, and *Mr. C. R. Stranahan,* County Attorney of Hill County, for Respondents, submitted a brief; *Mr. Woody* and *Mr. Stranahan* argued the cause orally.

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

On August 18 last, a petition in due form, signed by the required number of qualified freeholders, was presented to the board of county commissioners of Hill county, praying that there be submitted to the electors the question whether an indebtedness should be incurred to furnish seed grain, feed, provisions and other necessary supplies to the inhabitants of the county who by reason of drought and other unfavorable climatic conditions had been rendered financially unable to procure the same.   The proceedings were taken pursuant to Chapter 8, Laws of the Extraordinary Session of 1919.   Upon consideration of

the petition, the board ordered an election for September 2 to determine whether a county indebtedness in the sum of $800,000 should be incurred for the purposes indicated. At the same election a proposition to incur an indebtedness in the sum of $150,000 for road purposes, and a further proposition to incur an indebtedness of $200,000 under the provisions of Chapter 19, Laws of the Extraordinary Session of 1918, were submitted. Each of the three propositions received a majority of the votes cast, but thereafter the board concluded that $727,000 was the limit of indebtedness for Hill county; that the additional indebtedness for road purposes should be incurred; and that, of the $800,000 indebtedness authorized, only about $110,000 could be made available, and refused to proceed further in that behalf. This proceeding was thereupon instituted. The motion of the board to quash the alternative writ heretofore issued raises for determination the single question: Upon what basis is the constitutional limit of county indebtedness computed?

Section 4 of Chapter 8, above, provides that upon consideration of the petition the board must make an estimate of the amount of indebtedness the county will be required to incur in order to furnish the relief. Section 6 provides for an election if the estimate exceeds $10,000, and provides further that if the amount of the estimate, together with the outstanding indebtedness, exceeds the constitutional limit, the estimate shall be reduced to an amount which, with the outstanding indebtedness, will not exceed the limit.

By submitting to the electors the question whether an [1] indebtedness in the sum of $800,000 should be incurred, the board determined that such amount, together with the outstanding indebtedness, would not exceed the constitutional limit. The evident purpose of the provision in section 6, above, is to furnish a rule for the guidance of the board to the end that the expense of an election shall be avoided if the margin between the outstanding indebtedness and the limit fixed by the Constitution is so narrow that no substantial amount of additional indebtedness is possible. A mistake on the part of the board

in determining that a particular amount of additional indebtedness will not bring the total county indebtedness beyond the [2] limit cannot possibly settle the question. The validity of the additional indebtedness must be determined from a consideration of the amount of it, the amount of the existing indebtedness, and the amount fixed by the Constitution as the limit of indebtedness.

Without deciding whether money in the sinking fund, or taxes [3] imposed for the benefit of the sinking fund and in the process of collection, may be deducted, it is sufficient for the purposes of this proceeding to say that at all the times herein mentioned the outstanding indebtedness of Hill county was $467,000. Whether the additional indebtedness of $800,000 could be incurred legally depends upon the answer to the [4] inquiry: What is the constitutional limit of indebtedness of Hill county?

Section 5, Article XIII, of our Constitution, so far as involved here, provides: "No county shall be allowed to become indebted in any manner, or for any purpose, to an amount, including existing indebtedness, in the aggregate, exceeding five (5) per centum of the (value of the) taxable property therein, to be ascertained by the last assessment for state and county taxes previous to the incurring of such indebtedness."

At the time the Constitution was drafted, the statute provided that all taxable property should be assessed at its full cash value (sec. 1673, Fifth Div. Comp. Stats. 1887), and the same statute has been in force continuously since (sec. 2502, Rev. Codes). In view of this declaration of the public policy of the state, the language of the Constitution above must be construed to mean that the limit of county indebtedness is five per cent of the value of the taxable property as that value is disclosed by the assessment-roll; and since the only value which appears on the assessment-roll is the value fixed by the county assessor as equalized by the county and state boards of equalization— that is, the full cash value—the expressions "value of taxable property" and "assessed valuation" mean the same thing.

Chapter 51, Laws of 1919, has nothing whatever to do with the assessment of property or the determination of the assessed [5] valuation. It deals only with the imposition of taxes after the assessment-roll is completed and in the hands of the county clerk. Its provisions are directed to the clerk, and the extension of the taxes by him involves only a matter of mathematical calculation—a mere ministerial duty. (*Hilger* v. *Moore, ante,* 146, 182 Pac. 477.)

Under the provisions of the Constitution above, the limit of [6] indebtedness is computed upon the assessed valuation as disclosed by the last assessment-roll, and not upon the percentage of value upon which taxes are computed. The language is too plain to admit of doubt or to require the citation of authorities to support the conclusion; but, under like constitutional provisions, the same rule of construction has been applied in other states. (*Halsey & Co.* v. *Belle Plaine,* 128 Iowa, 467, 104 N. W. 494; *Hansen* v. *Hoquiam,* 95 Wash. 132, 163 Pac. 391.)

The assessed valuation of the taxable property in Hill county, as shown by the assessment-roll for 1918, was $17,000,000 in round numbers, and as shown by the assessment-roll for 1919 it is $46,000,000 in round numbers. Which of these is the last assessment-roll, within the meaning of section 5 of the Constitution above? At the time the election was held and the additional indebtedness authorized, the assessment-roll for 1919 was not completed; but it was complete before any of the money authorized to be expended was paid out and before any warrants against the fund were issued. While it required the favorable vote of the electors to empower the board to incur an indebtedness, for a single purpose in a sum exceeding $10,000, the favorable vote itself did not create the indebtedness. The additional [7] indebtedness comes into existence only when Hill county becomes legally liable to pay it in whole or in part, or, in other words, in this instance, when the evidence of its indebtedness—the bonds or warrants—are issued, or binding contracts are made. (*Davenport* v. *Kleinschmidt,* 6 Mont. 502, 13 Pac. 249; *Jordan* v. *Andrus,* 27 Mont. 22, 69 Pac. 119; *State ex rel. Palmer*

v. *Hickman,* 11 Mont. 541, 29 Pac. 92; 1 Dillon on Municipal Corporations, sec. 207; McQuillin on Municipal Corporations, sec. 2232.)

The last assessment-roll, then, within the meaning of the [8] constitutional provisions above is the last completed roll before the debt is contracted, and not the last assessment-roll in existence at the time the indebtedness is authorized. This rule does not permit the board to delay incurring the indebtedness for an unreasonable time in order to gain the advantage of increased property values as shown by a subsequent assessment-roll. (*Carlson* v. *City of Helena,* 39 Mont. 82, 17 Ann. Cas. 1233, 102 Pac. 39.) There is no question of unreasonable delay involved in this proceeding, however.

The assessed valuation of $46,000,000, as shown by the [9] assessment-roll for 1919, is the basis upon which to compute the limit of indebtedness; and since the indebtedness authorized, together with the existing indebtedness, does not exceed five per cent of that value, it is the plain, legal duty of the board to exercise the authority conferred by the favorable vote and incur the indebtedness.

The motion to quash is overruled, and the peremptory writ will issue as prayed for.

*Writ granted.*

MR. CHIEF JUSTICE BRANTLY and ASSOCIATE JUSTICES HURLY, PATTEN and COOPER concur.