RANKIN, Respondent, *v.* LOVE, et al., Appellant.

No. 9032.

Submitted January 25, 1951. Decided June 14, 1951.

232 Pac. (2d) 998.

Mr. John M. Comfort, County Attorney, Virginia City, for appellants.

Mr. Frank E. Blair, Mr. Robert J. Webb, Virginia City, for respondent.

Mr. Wesley W. Wertz, Helena, amicus curiae.

Mr. Comfort, Mr. Blair and Mr. Wertz argued orally.

MR. JUSTICE BOTTOMLY:

This is an appeal from a decree and judgment permanently enjoining the defendants, Pearl C. Love, P. T. Hacker, William Armitage, Stanton Frisbie and John Jenkins, as trustees of School District No. 52, Madison county, Montana, and also as trustees of High School District No. 52, Madison county, Montana, and John C. Tolson, as clerk of both boards of trustees, from becoming indebted in a sum greater than the constitutional limit of three per centum of the value of the taxable property in School District No. 52 and the purported Ennis High School District, viewing the two districts as a single taxing unit within the prohibition of section 6, Article XIII of the state Constitution and section 75-3902, R. C. M. 1947, from selling, offering for sale or delivering any bonds of the district in excess of such constitutional limit.

School District No. 52, Madison county, regularly organized under the school laws of this state, has maintained at Ennis a grade school and a fully accredited high school covering the full four years' course of study since at least the year 1921, totaling in all a complete twelve full years of instruction upon a fully accredited basis. At the times herein mentioned School

District No. 52 had no grade or elementary school indebtedness, but the indebtedness for its high school amounted to $22,553.91. The value of the taxable property of the district was $4,267,362.

The district was desirous of constructing and equipping an elementary school estimated to cost $115,000, and in addition required an estimated $37,000 for the constructing and equipping of one multipurpose room to be used by the high school and one boiler room, both to be erected in conjunction with the elementary school. The two amounts total $152,000. Considering school district No. 52 and high school district No. 52 as one taxing unit, the constitutional limitation of 3% of the value of the taxable property would yield only $128,020.80, and consequently the proposed indebtedness would be some $46,533.00 in excess of the then constitutional limit.

At the time of the Third Constitutional Convention in 1889 and the drafting of our Constitution, our public school system was well outlined and established. The framers of our Constitution were well advised of the schools provided and of the function of the school district as the taxing unit.

Under the school law of 1879, Rev. Stat. 1879, Ch. LV, sec. 1132, the territorial legislature, after providing for the school districts, further provided for the high school as follows: "Whenever the interests of the districts require it, the board of trustees may establish a high school, employ a principal teacher and subordinate teachers, and grade the school into departments and classes," both to be financed through the single taxing unit of the school district as established.

A reading of the statutory provisions for public schools, prior to and at the time of the adopting of our Constitution and of the work of the committees and the debates in the convention and the Constitution itself, clearly indicates the large amount of work and thought that was given to the subject of free public schools—districts had been established, provision made for the election of trustees, their duties, separate school elections, the grades, departments and the subjects to be taught, and where deemed necessary such district could establish a high school,

and all through such history of the development of the public school system the school district was known as the only taxing unit for the support of such schools. No separate unit for taxation or otherwise was known as a high school district.

At the time of the drafting of section 6 of Article XIII there was no example or conception of any additional taxing unit to be superimposed on the school district as then known, nor could they have had any such condition in mind, as their debates clearly demonstrate that they were alert in seeing to it that a definite limit of indebtedness was imposed for each taxing unit of government.

The provisions of the Constitution are to be construed in the light of conditions as they existed at the time of its adoption. State ex rel. Bottomly v. District Court, 73 Mont. 541, 547, 237 Pac. 525; State ex rel. Jackson v. Kennie, 24 Mont. 45, 60 Pac. 589.

Knowing that there was only one kind of public school district and that such district could provide all schooling from the first grade to and including a high school, the Constitutional Convention declared in clear and unmistakable language, that all could understand, a safeguard and protection for the taxpayer against the overenthusiastic impulse to saddle an unreasonable and intolerable tax burden on the property of a school district by declaring that no school district shall be allowed to *become indebted in any manner or for any purpose* to an amount, including existing indebtedness, in the aggregate exceeding "three (3) per centum of the value of the taxable property therein * * *." The intent and purpose of this provision is so specific, unambiguous and clear that it needs no interpretation. To leave no doubt, they further solemnly declared: "* * * all bonds or obligations in excess of such amount given by or on behalf of such * * school district shall be void". Mont. Const., Art. XIII, sec. 6, supra. Emphasis supplied.

The framers of our Constitution further provided that the public schools shall be open to all children and youth between the ages of six and 21 years. Mont. Const. Art. XI, sec 7.

188

The provisions of our Constitution are mandatory and prohibitory. Mont. Const., Art. III, sec. 29.

We are here considering the fundamental, basic and substantive law of our state.

It is the duty and responsibility of this court to ascertain ▮ the meaning of the Constitution as written, neither to add to nor to subtract from, neither to delete nor to distort.

Obviously, the only purpose of a school district is to designate ▮▮ a certain territory within which a public school or schools may be established and maintained. The school laws of this state have always clearly contemplated the establishment of a school or schools, high schools as well as grade schools, within the district as being essential to the very existence of the district itself. The kind of school that is thus contemplated is spoken of in the laws upon the subject as a "public school," or "public schools." Such a school is a school established and maintained at public expense and comprising the elementary grades, and when established, the grades of high school work.

In accordance therewith, a high school, when established, ▮ becomes an integral part of the public school system in that particular district. It is under the jurisdiction of the same board of trustees as the elementary grades or any other department of the public school system existing in that particular "school district," and financed and maintained by taxation on the property lying and being within the exterior boundaries of that particular school district. This was the law of this state prior to and at the time of the writing of our Constitution in regard to public schools and "school districts," and it is still the law of this jurisdiction.

The framers of our Constitution specifically designated and provided for the various public taxing units or districts for the state, the county, the city, the town, the township, and the school district; no mention is made of a high school district as a separate taxing unit, for the very good reason that by law any "school district" could establish a high school, as a part of the school district taxing unit.

The argument of need, necessity, hardship or inconvenience, cannot avail in the interpretation of the constitutional mandate relative to the limitations placed upon the power of school districts to contract indebtedness. The rule of strict construction must be applied, and any doubt as to such power must be resolved against it. If this court is to be controlled in the interpretation of the Constitution by considerations outside its provisions, there would be very few, if any, provisions of it which would not be rendered nugatory. See: Butler v. Andrus, 35 Mont. 575, 90 Pac. 785; State ex rel. Helena Waterworks Co. v. City of Helena, 24 Mont. 521, 63 Pac. 99, 55 L. R. A. 336, 81 Am. St. Rep. 453; 1 Abbott on Municipal Corporations, sec. 151, p. 324; 15 McQuillin, Municipal Corporations, sec. 39.07, p. 14, sec. 41.11, pp. 323, 324.

It is also crystal clear that there is no provision in the Constitution authorizing the legislature in regard to school districts to extend the limit therein fixed as it allowed for cities and towns in providing sewage systems or to procure a water supply. The constitutional provision curbs equally the power of the legislature, the officials and the people themselves, and was designed to protect the taxpayer from the folly and improvidence of either, or of all combined.

In the absence of constitutional limitations, the legislature may create or abandon a district, or it may change the boundaries of districts, or create joint districts. The legislature, however, may not enlarge the power of a school district to create a debt beyond the limitations imposed by section 6 of Article XIII of the Constitution.

In this case the indebtedness proposed to be incurred, at that time, with the existing indebtedness, exceeded the constitutional limit of three per cent. Under the then limit fixed by our Constitution, this could not be done ''in any manner or for any purpose'' to an amount in the aggregate of three per cent.

The high school district attempted to be created under Chapter 275, Laws of 1947, has no authority to operate and manage a high school; but its sole purported function is to borrow

190

money for the purpose of construction, repair, improvement and equipment purposes only, all of which purposes and powers have heretofore been conferred upon and exercised by the board of trustees of every school district in which grade and high schools have been established. All of such purposes and powers granted by Chapter 275 were and had been exercised by the board of trustees of school district No. 52 prior to the action creating high school district No. 52. The only effect of the attempted creation of high school district No. 52 was to divide the powers already exercised by school district No. 52 and an attempt to expand the constitutional limit of indebtedness by the pyramiding of another tax unit upon the identical property and taxpayers of school district No. 52. Contravening section 6 of Article XIII as it does, Chapter 275, Laws of 1947, R. C. M. 1947, secs. 75-4601 to 75-4606, is unconstitutional and is invalid.

The people of any school district and of district No. 52 may spend whatever sum of money is necessary in the maintenance of their public schools in accordance with statute, so long as they do not create an indebtedness in excess of the limit set by section 6 of Article XIII and thereby pass on an obligation to the coming generations beyond the limit provided.

Section 6 of Article XIII is a limitation of indebtedness as distinguished from a limitation of the amount that may be raised by taxation to serve the necessary current expenses of the district. It is a laudable endeavor for people to desire to sacrifice in providing the facilities and opportunities of a good public school system of education for their children. It is true that under the conditions of the past few years, the increase in pupil load, rising prices and costs of operation, school trustees have been hard pressed in their search for finances to keep pace with the growing demand. However, there is a legal and constitutional method of remedying this situation and that method is by amending the Constitution.

The injunctive decree entered July 25, 1950, was correct under the Constitution as it then read. However, the 1949 legislature, proceeding in the proper and constitutional manner set

in motion the machinery whereby the constitutional limit of three per centum would be raised to five per centum. This was accomplished by the enactment of Chapter 193, Laws of 1949, and the submission thereof at the November 1950 election to the qualified electors of the state, of a proposed constitutional amendment to section 6 of Article XIII of our Constitution. The proposed amendment was adopted and on December 6, 1950, by proclamation of the Governor became operative and a part of our fundamental law, which now provides: ''No * * * school district shall be allowed to become indebted in any manner or for any purpose to an amount, including existing indebtedness, in the aggregate exceeding *five* per centum (*5%*) of the taxable property therein, to be ascertained by the last assessment for state and county taxes previous to the incurring of such indebtedness, and all bonds or obligations in excess of such amount given by or on behalf of such * * * school district shall be void.''

Thereafter, to make the statute conform with the foregoing constitutional amendment, the legislature by the enactment of Chapter 65, Laws of 1951, amended section 75-3902, R. C. M. 1947, which amendment does not become effective until July 1, 1951.

The trial court's injunctive order continues in full force and effect and virtue until July 1, 1951, the effective date of Chapter 65, Laws of 1951, on which date it becomes inoperative by virtue of the above mentioned subsequent enacted legislation, of which school district No. 52, Madison county, Montana, being the taxing unit, may then take full advantage and proceed within the limits and prohibition of the Constitution and statutes, as amended.

The majority decision in House v. School District No. 4 of Park County, 120 Mont. 319, 184 Pac. (2d) 285, is expressly overruled, and we call attention to the fact that the rights of parties who have heretofore entered into contracts and the validity of the bonds that have been sold in reliance upon this court's decision in the House Case, supra, are in no way affected

by this decision, and are to be determined in accordance with the well established rule as set forth in the following cases: Gelpcke v. City of Dubuque, 1 Wall. 175, 68 U. S. 175, 17 L. Ed. 520; Havemeyer v. Iowa County, 3 Wall. 294, 70 U. S. 294, 18 L. Ed. 38; Douglass v. Pike Co., 101 U. S. 677, 25 L. Ed. 968; Township of New Buffalo v. Cambria Iron Co., 105 U. S. 73, 26 L. Ed. 1024; Tidal Oil Co. v. Flanagan, 263 U. S. 444, 451, 452, 44 S. Ct. 197, 68 L. Ed. 382; City of Los Angeles v. Los Angeles City Water Co., 177 U. S. 558, 20 S. Ct. 736, 44 L. Ed. 886; Levin v. Baltimore & O. R. Co., 179 Md. 125, 17 A. (2d) 101; Hoven v. McCarthy Bros. Co., 163 Minn. 339, 204 N. W. 29, 30; 7 R. C. L., Courts, sec. 36, p. 1010; 97 A. L. R. n. 11, p. 516; 15 McQuillin, Municipal Corporations, sec. 41.11, p. 324.

The decree appealed from is affirmed, but as of July 1, 1951, the injunction order and writ become inoperative by reason of the amendment of the Constitution and statute, which become effective subsequent to the entry of the decree and issuance of the writ.

Remittitur will issue forthwith.

MR. CHIEF JUSTICE ADAIR, and MR. JUSTICE FREE-BOURN, concur.

MR. JUSTICE METCALF, (dissenting).

The majority decision to pass upon the constitutional question in this case is contrary to fundamental principles of constitutional law.

"The universal rule [is] that the constitutionality of a statute will not be determined in any case unless such determination is absolutely necessary to a decision upon the merits of the action * * *." Montana State Board of Examiners in Photography v. Keller, 120 Mont. 364, 367, 185 Pac. (2d) 503, 505; Dickey v. Board of Commissioners, 121 Mont. 223, 191 Pac. (2d) 315.

Since the passage and approval of the constitutional amendment to section 6, Article XIII of the Montana Constitution and the amendment to section 75-3902, R. C. M. 1947, by Chapter

65, Laws of 1951, the question has become moot. Thomas v. State Board of Examiners, 106 Mont. 120, 75 Pac. (2d) 789.

By those amendments the constitutional debt limit for school districts was increased from 3% to 5% of the value of the taxable property therein. Even if elementary school district No. 52 and high school district No. 52 be construed to be one district for the purpose of fixing the debt limit, there is still no violation. The taxable value of property in school district No. 52 is $4,267,362. The debt limit for a district is $213,368.10. High school district No. 52 had an outstanding indebtedness of $22,553.91. The high school district desired to sell bonds in the amount of $37,000 and bonds amounting to $115,000 were proposed for the construction of an elementary school. This amounts to a total indebtedness of $174,553.91 or over $38,000 less than the constitutional and statutory debt limit for a single district. Under no theory is this plaintiff injured. The question of the constitutionality of an act can be raised only by those adversely affected. Pierson v. Hendricksen, 98 Mont. 244, 38 Pac. (2d) 991.

The time that the indebtedness is incurred is the time that is determinative as to whether or not there has been a violation of the constitutional debt limit. The indebtedness is incurred when the bonds or notes are issued and sold. State ex rel. Galles v. Board of County Commissioners, 56 Mont. 387, 185 Pac. 456; Annotation in 109 A. L. R. 961. The bonds in the case at bar will not be sold until after July 1, 1951, and the indebtedness will be incurred at that time.

This court then should remand the cause to the district court with directions that it be dismissed. Until the decision in the instant case the rule was, the courts will not pass upon moot constitutional questions. Hersey v. Neilson, 47 Mont. 132, 131 Pac. 30, Ann. Cas. 1914C, 963.

That the case is moot and the permanent injunction cannot issue is admitted by the majority's determination that after the effective date of Chapter 65, Laws of 1951, the school district may proceed with the sale of the bonds.

However, since the majority of the court has seen fit to pass upon the constitutional question raised and overrule the previous decision of this court recently rendered in House v. School District No. 4 of Park County, 120 Mont. 319, 184 Pac. (2d) 285, some comment must be made upon that phase of the decision.

My views are set forth in. Mr. Justice Choate's majority opinion in the House Case in which I concurred. It is unnecessary to reiterate them here. See also, the annotation in 171 A. L. R. 729, which collects cases from many jurisdictions and demonstrates that the weight of authority supports this court's decision in the House Case.

It is the basis upon which my associates rest their declaration that sections 75-4601 to 75-4606 are unconstitutional that is most astonishing. That is the proposition running throughout the majority opinion that there was only one kind of a school district at the time the Montana Constitution was adopted and therefore such a district must bear all expense of education and is the only taxing and borrowing unit for the support of the schools from grade 1 to 12. It is variously stated. For example the majority opinion says: "Knowing that there was only one kind of public school district and that such district could provide all schooling from the first grade to and including a high school, the Constitutional Convention declared in clear and unmistakable language, that all could understand, a safeguard and protection for the taxpayer against the over-enthusiastic impulse to saddle an unreasonable and intolerable tax burden on the property of a school district by declaring that no school district shall be allowed to *become indebted in any manner or for any purpose* to an amount, including existing indebtedness, in the aggregate exceeding 'three (3) per centum of the value of the taxable property therein * * *.' '' In another place the opinion says: "The school laws of this state have always clearly contemplated the establishment of a school or schools, high schools as well as grade schools, within the district as being essential to the very existence of the district itself." Again:

"In accordance therewith, a high school, when established, becomes an integral part of the public school system in that particular district. It is under the jurisdiction of the same board of trustees as the elementary grades or any other department of the public school system existing in that particular 'school district,' and financed and maintained by taxation on the property lying and being within the exterior boundaries of that particular school district. This was the law of this state prior to and at the time of the writing of our Constitution in regard to public schools and 'school districts,' and it is still the law of this jurisdiction."

Such declarations are contrary to long established administrative practice sanctioned by statutes and decisions within this state. If carried to their logical conclusion the entire high school system as it exists at present will be upset. Such a construction of the Constitution would limit subjects taught to the "three R's" because they were the ones taught when the Constitution was drafted and limits the construction to the little Red School House because that was the structure with which the delegates to the Constitutional Convention were familiar.

This little red school house doctrine is an innovation in this state and the declaration that "all through such history of the development of the public school system the school district was known as the only taxing unit for support of such schools" is without support in the statutes or decisions. The statement that "the school laws of this state have always clearly contemplated the establishment of a school or schools, high schools as well as grade schools, within the district as being essential to the very existence of the district itself" was only true of the first ten years of this state's existence under the present Constitution.

The school laws of this state have since 1899 provided for county high schools, and in addition to the taxing unit of the elementary school district the county was authorized to levy taxes for the support of a high school and incur indebtedness for high school purposes.

In State ex rel. Henderson v. Dawson County, 87 Mont. 122, 286 Pac. 125, 128, this court declared: ''The framers of the Constitution did not have in contemplation the establishment of high schools as a county project and independent of school districts, but declared it the duty of the Legislature 'to provide by taxation, or otherwise, sufficient means, in connection with the amount received from the general school fund, to maintain a public, free common school in each organized district in the state, for at least three months in each year'. (Section 6, Art. 11), and having prohibited counties from becoming indebted in excess of a fixed maximum (section 5, Art. 13), declared an independent limitation of indebtedness for school districts (section 6, Art. 13).

''However, a high school education is a necessary intermediate step between the ordinary grade schools and the university courses provided for, and the term 'common' as applied to our schools 'bears the broadest and most comprehensive signification, it being equivalent to public, universal, open to all.' It is used in contradistinction to private and denominational schools, colleges, and the like, but has no reference to the grade of school or what may be taught therein, nor the method of rule or government thereof. People v. Board of Education of City of Brooklyn, 13 Barb., N. Y., 400; Roach v. Board of Directors, 7 Mo. App. 567; Special School District [No. 65 of Logan County] v. Bangs, 144 Ark. 34, 221 S. W. 1060; Board of Education [of Sapulpa] v. Board of Commissioners, 127 Okl. 132, 260 Pac. 22.

''Thus, under constitutional authority, the Legislature may either leave the matter of high school education to the several school districts of a county or provide a different method of rule or government for this class of 'common schools.' For years the first method was followed; such high school education as was afforded was given in district school courses or high schools established in districts, without legislative sanction.''

The court then traces some of the history of high school legislation and inferentially admits that the legislature could

have created another school district. The court said: "* * * the creation and maintenance of high schools are not, strictly speaking, county purposes, and the law in this regard is rather a lending of the credit of the county for this purpose. * * * Having chosen to require counties to lend their credit to their high schools rather than to make provision for county high school districts and thus render the constitutional limitations as to school districts applicable, the legislature declared that the issuance of bonds for high school purposes 'shall not increase the indebtedness of any county beyond the maximum limit fixed by the state Constitution.' "

The precise question the court was deciding in the Henderson Case was whether the county debt limit was being exceeded. The constitutional debt limit was fixed by Article XIII, section 5, at 5% of the taxable property therein "which was computed upon the full cash value of the property." The statutory debt limit was less since it was based upon 5% of the assessed value of the property. However the court pointed out that the statute authorizing the sale of county bonds for high school purposes provided that the issuance of the bonds "shall not increase the indebtedness of any county beyond the maximum limit fixed by the state constitution." Therefore, the statutory method of computing the debt limit on assessed valuation was not applicable to high school bonds but the limit was 5% of the full cash value. Under the decision in the Henderson Case the school districts could each become indebted for school purposes up to the full constitutional limit and in addition the county could become indebted for school purposes also to the full constitutional debt limit for each county. This in spite of the fact that for other county purposes not connected with schools the county debt limit would be less. The legislature authorized and this court approved exactly what is objected to in the instant case, namely, the overlapping of two distinct tax units for school purposes, and the incurring of indebtedness to the full constitutional limit in both such units. Under the decision of the Henderson Case if a county had no other indebtedness each

elementary district could become indebted to the limit of 3% for school purposes and the same property would also be liable for a debt limit of 5% for school purposes by reason of an authorized county bond issue, making a total of 8% for school purposes.

In Pierson v. Hendricksen, supra, an attempt was made to declare Chapter 47, Laws Extraordinary Session 1933-1934 invalid as violative of section 6, Article XIII of the Montana Constitution, under the same theory now adopted by a majority of this court. That attempt was disposed of by demonstrating that in the case before the court there was no violation of the Constitution. The court properly refused to pass upon the possibility that the debt limitation of the Constitution might be violated by that Act because it would amount to passing upon an abstract question. As discussed above that is the disposition that should be made of the instant case. But the Pierson Case is also authority for the proposition that not only the elementary district is a taxing and borrowing unit for school purposes, but the county and high school districts can also be taxing and borrowing units. See also, State ex rel. Berthot v. Gallatin County High School Dist., 102 Mont. 356, 58 Pac. (2d) 264.

The Act before the court in the Pierson Case created high school districts for the purpose of borrowing money. The Act stated that "it shall constitute an additional and cumulative method of borrowing money". In elementary districts maintaining high schools and in counties having a county high school the board of trustees for the new high school district was declared to be the same as the board of trustees for the elementary districts or the county high school. The situation was the same as in the case at bar, identical board of trustees, identical limits, the same taxpayers, and a new district created for borrowing purposes. The validity of the Act was unanimously sustained by this court.

In their eagerness to overrule the House Case and pass upon the abstract question of the constitutionality of sections 75-4601 to 75-4606, the majority of the court have chosen to disregard

the fundamental rule of *stare decisis* which is especially applicable to the construction of written constitutions. State ex rel. Sparling v. Hitsman, 99 Mont. 521, 44 Pac. (2d) 747; State ex rel. Kain v. Fischl, 94 Mont. 92, 20 Pac. (2d) 1057; 11 Am. Jur., Constitutional Law, sec. 50, p. 659. Cases can be overruled. But the effect of the majority decision is to also overrule State ex rel. Henderson v. Dawson County, supra; Pierson v. Hendricksen, supra; State ex rel. Berthot v. Gallatin County School District, supra; and Young v. Board of Trustees, 90 Mont. 576, 4 Pac. (2d) 725. If they are wrong they, too, should be overruled. If they are right, and I believe they are, they should be followed. They should not be allowed to drift "as derelicts on the waters of the law." Justice Frankfurter, Alabama Public Service Comm. v. Southern Ry. Co., 341 U. S. 341; 95 L. Ed. 1002; 71 S. Ct. 762, 772.

High schools are a part of the public school system and the legislature has authorized the county to issue bonds for county and district high schools in addition to the issuance of bonds by the districts themselves. Such bonds are obligations of the county and are paid in the same manner as other county bonds. Taxes for the maintenance of public schools are levied in each district. In addition a county-wide tax is levied for elementary schools and high schools making the tax unit for support of the schools both the elementary district and the county.

Under a system of taxation that has evolved as a result of numerous decisions of this court and statutes drafted to comply with previous declarations of this court, the elementary districts levy their 5 mill tax, then the county as a separate tax unit levies a 10 mill tax. This tax is imposed by the county budget board, a different administrative unit from the local board of trustees. The elementary districts then become entitled to their share of the foundation program which makes payment to all districts entitled thereto out of the common school equalization fund which includes money received from income taxes and corporation license taxes imposed by the state. If the income

from these three separate taxing units is insufficient, then the elementary district must pay the rest.

For high schools the initial levy is the county-wide levy; if this were adequate there would be no levy whatsoever from the districts. If the county-wide levy is inadequate the high schools receive their share of state funds and the balance is received from a tax on the supporting high school district or elementary district.

Under present law, then, there are three separate taxing units for the public schools. The state which includes counties and school districts, the county which includes school districts, and the school districts themselves. There are two units in addition to the high school districts which may borrow for school purposes, the counties and the elementary districts.

It is proper that this should be so under section 1 of Article XI making it the duty of the legislature to establish and maintain a uniform system of "public, free, common schools" and the requirement in section 6, Article XI, that the legislature provide sufficient means to maintain these public, free, common schools. County or district high schools were not contemplated by the constitutional convention but the need for broader high school training soon became evident and 10 years after the adoption of the Montana Constitution the legislature provided for county high schools and created an additional taxing and borrowing unit for their support. The authority to do this has been uniformly sustained until the decision in the instant case.

Throughout the history of the state new districts have been created as the need arose. The obstacles to the creation of such districts and the incurring of indebtedness by them are many and difficult to surmount. They must first be authorized by the legislature. Then the people themselves must petition for an election and specifically declare in that election that they desire to pledge their property for the construction and maintenance of additional educational facilities. Since the decision of this court in the House Case frequent instances have arisen when the people by their vote at the bond elections have de-

clared that the burden was too great. Other instances have arisen when the people in an election consented to an additional indebtedness for an elementary district but refused to approve a high school district indebtedness or the contrary.

Admittedly the Constitution is a limitation upon action by the people or the legislature. But the narrow construction given the Constitution by the doctrine of the little red school house and the three R's imposes a limitation that was never contemplated by our founding fathers. The better rule, the more democratic rule, was propounded by the previous decision of this court. It should be followed and this case dismissed.

MR. JUSTICE ANGSTMAN:

I agree with Mr. Justice Metcalf that the question presented here has become moot so far as this case is concerned. If, however, I were to express myself on the merits of the question unaffected by the amendment of section 6, Article XIII, I would concur in the result reached in the opinion of Mr. Justice Bottomly for the reasons set forth in my dissenting opinion in House v. School District, 120 Mont. 319, 184 Pac. (2d) 285.