JUSTICE NELSON
specially concurs.
I concur in the result of our opinion but not in our rationale. Basically, we affirm the District Court because we conclude that the ordinance at issue here is a zoning ordinance and that zoning and rezoning are indistinct, both being legislative enactments subject to the right of referendum.
While I do not disagree with those conclusions as far as they go, our opinion, by default, perpetuates the long-articulated notion relied upon by the District Court and discussed in other cases in Montana that acts of the legislative body which are characterized as “legislative” are subject to referendum, while “administrative” or “quasi-judicial” acts of that body are not. See, for example, Carlson v. City of Helena (1909), 39 Mont. 82, 102 P. 39; Allen v. City of Butte (1918), 55 Mont. 205, 175 P. 595; City of Billings v. Nore (1966), 148 Mont. 96, 417 P.2d 458; Chouteau County v. Grossman (1977), 172 Mont. 373, 563 P.2d 1125; Dieruf v. City of Bozeman (1977), 173 Mont. 447, 568 P.2d 127; Lowe v. City of Missoula (1974), 165 Mont. 38, 525 P.2d 551; Little v. Board of County Commissioners (1981), 193 Mont. 334, 631 P.2d 1282; Schanz v. City of Billings (1979), 182 Mont. 328, 597 P.2d 67. It is with that proposition that I disagree.
Rather than perpetuate a fiction that is without constitutional validity, I would simply hold that § 7-5-131, MCA, is unconstitutional as being in violation of Article III, Section 5 of the Montana Constitution to the extent that the statute restricts the power of referendum to “legislative” acts of the local governing body.
It is axiomatic that the Constitution is the supreme law of the state, Associated Press v. Bd. of Public Educ. (1991), 246 Mont. 386, 391, 804 P.2d 376, 379, and that constitutional provisions are conclusive upon the legislature and prevent the enactment of any law which *407 extinguishes or limits the powers conferred by them. Noll v. City of Bozeman (1975), 166 Mont. 504, 507, 534 P.2d 880, 881.
To determine the meaning of a constitutional provision we employ the same rules of construction employed to construe statutes. The intent of the framers of a constitutional provision is controlling. The intent should be determined from the plain meaning of the words used. If that is possible we apply no other means of interpretation. (Citations omitted.)
Great Falls Tribune v. Public Schools (1992), 255 Mont. 125, 128-29, 841 P.2d 502, 504. We are to simply “ascertain the meaning of the Constitution as written, neither to add to nor to subtract from, neither to delete nor to distort.” Rankin v. Love (1951), 125 Mont. 184, 188, 232 P.2d 998, 1000.
In Article V, Section 1, of the Montana Constitution the people expressly reserved unto themselves the power of referendum. In furtherance of that reservation of power, the language of Article III, Section 5, of the Montana Constitution is unambiguous and explicit.
Section 5. Referendum. (1) The people may approve or reject by referendum any act of the legislature except an appropriation of money. ... (Emphasis added.)
As that language of the Constitution clearly provides, the people of Montana reserved unto themselves the power to approve or to reject by referendum any act of the legislature — not simply ‘legislative” acts, but any acts, including “administrative” acts and “quasi-judicial” acts. Moreover, at Article XI, Section 8, the people directed the legislature to extend the “... referendum powers reserved to the people by the constitution to the qualified electors of each local government unit.”
While § 7-5-131, MCA, was enacted in an attempt to fulfill that latter constitutional mandate, the statute, nonetheless, restricts the referendum powers extended to the people to “Resolutions and ordinances within the legislative jurisdiction and power of the governing body of the local government, except as set out in subsection (2) ...” subsection (2) being not at issue here. (Emphasis added.) Unfortunately that language, fortified by numerous decisions of this Court cited above, has perpetuated the notion that ‘legislative” acts, resolutions and ordinances are subject to approval or rejection by referendum, while “administrative” or “quasi judicial” acts are not. In fact and in law, the Constitution makes no such distinction.
In our interpretations of Article III, Section 5, we have stated that we are guided by the principle that the “referendum provisions of the *408 Constitution should be broadly construed to maintain the maximum power in the people ...” Chouteau County v. Grossman (1977), 172 Mont. 373, 378, 563 P.2d 1125, 1128; Nicholson v. Cooney (1994), 265 Mont. 406, 411, 877 P.2d 486, 488. Yet, in this case and in the various other legislative act versus administrative act cases cited above, we have lost sight of that principle and have, to the contrary, narrowed the broad power of referendum reserved in the people by restricting that power to ‘legislative” acts. Certainly, if the people had wanted to limit their power of referendum to “legislative” acts, they could have done so, as they clearly did with respect to “appropriations of money.” See Art. III, Sec. 5, Mont.Const.
No legislative act versus administrative or quasi judicial act distinction appears in the language of the Constitution, and it is improper and in violation of our well established rules of construction to read such a provision into that document. Section 7-5-131, MCA, restricts the constitutional right of the people to approve or reject by referendum any act of the governing body of the local government guaranteed by Article III, Section 5 of the Montana Constitution. To that extent, the statute is in derogation of the Constitution and, therefore, cannot stand. The District Court, and now this Court, have arrived at the right result but for the wrong reason. In the former I concur; in the latter I cannot.
JUSTICES GRAY and LEAPHART join in the foregoing special concurrence.