## BOARD OF EDUCATION OF CITY OF SAPULPA ex rel. STATE v. COREY. County Clerk, et al.

No. 8819—Opinion Filed March 13, 1917.

(163 Pac. 949.)

(Syllabus by the Court.)

1. **Schools and School Districts—Taxation—Additional Fund—Power of Excise Board —Use of Gross Production Taxes.**

When the board of education of an independent school district, consisting of a city of the first class and added outlying territory, on or before the second Tuesday of May of a given year, prepares a budget of the amount of money that will be required to be raised by taxation for the support and maintenance of the schools of the district for the ensuing fiscal year, and where it is found by said board that the assessed valuation of said school district for such year is not sufficient by a levy of five mills to create the fund, as determined in the said budget, and the board thereupon determines the amount of the excess levy above five mills that will be required to raise the amount as determined by the assessed valuation for the current fiscal year, and within ten days thereafter said board issues a call for an election for the purpose of voting on said excess levy, and at which election a majority of those voting on said levy vote in favor thereof, and where said board of education, in making the estimate sheet required by law, attach thereto a transcript showing the record of the board in calling the election and the returns received therefrom, and an itemized statement showing the financial condition of the district, and where the amount of said estimate is not in excess of the just and reasonable needs of the district, and the proceedings had are regular and are published and certified to the county excise board in the manner and within the time required by law, and where, after said proceedings are had by the board of education, there comes to its hands certain revenues from the state, on account of the gross production tax on oil and gas, and the distribution of which had theretofore been in litigation, and where said board upon being apprised of the final result of said litigation, and the amount due it on account of said tax, by resolution sets aside said funds for the current year for the erection and equipment of a needed high school building in said city, the excise board is without power to annul or vacate the proceedings had by said board of education, and to substitute therefor its own judgment as to how and for what purpose such funds should be used.

2. **Same.**

The gross production tax on oil and gas, collected and paid to the county treasurer under authority of section 4, subd. "a," art. 2, c. 107, Sess. Laws 1915, which provides that one-half (one per cent.) of the gross production tax collected under the provisions of said act "shall be, by the state treasurer distributed to the county treasurer of the counties from whence the same was collected, in proportion to the school enumeration of such counties, and same shall be distributed in aid of the common schools of such counties upon a per capita basis as are other common school funds," and section 4 of chapter 39, Sess. Laws 1916, which provides that one-sixth (five mills) of the gross production tax levied and collected by said act shall be "for and in aid of the common schools of the county from whence the oil or gas and other mineral was produced," may be used by the board of education of a city of the first class of the county in which the oil or gas is produced, for the purpose of constructing and equipping a needed high school building in said city; and the county excise board is without authority to set aside and annul the action of the board of education in setting aside as a building fund the taxes then on hand or collected during the current year.

3. **Same—High Schools in Cities of First Class—"Common Schools"—Statute.**

The free public school system of the state includes high schools in cities of the first class. Such high schools are "common schools" within the meaning of section 4, subd. "a," art. 2, c. 107, Sess. Laws 1915, and section 4, c. 39, Sess. Laws 1916, providing for the distribution of the gross production tax on oil and gas in aid of the common schools of the counties in which the oil and gas is produced.

Original application for mandamus by the Board of Education of the City of Sapulpa, on the relation of the State of Oklahoma, against Gus Corey, County Clerk, Stella Bayless, Superintendent of Public Instruction, Roy T. Wildman, County Attorney, J. E. Bruin, County Treasurer, and J. V. Frazier, County Judge, composing the Excise Board of Creek County, State of Oklahoma, and J. E. Bruin, County Treasurer of said county. Writ granted.

W. Morris Harrison, Lucien B. Wright, and Geo. L. Burke, for plaintiff.

Roy T. Wildman, County Atty., and Leroy J. Burt, Asst. County Atty., for defendants.

SHARP, C. J. At a regular meeting of the board of education of the city of Sapulpa, a city of the first class, held on Tuesday, May 9, 1916, said board prepared its estimate of the amount of money that would be required to be raised by taxation for the support and maintenance of the schools of said city and

outlying territory (constituting school district No. 33, Creek county) for the ensuing fiscal year. This amount was determined by the board to be $58,000. In order to raise said sum, it was found necessary to levy on the taxable property of said school district, over and above the five-mill limit, an additional tax of 4.4 mills. At said meeting a special election was called for the purpose of voting on the increased levy, and thereafter, on May 24, 1916, said election was held, with the result that a majority of the voters of the district, voting thereat, voted for said increase. Thereafter and during the same month, the result of said election and the proceedings of the board, together with a financial statement of said district, were duly published and certified to and filed with the county clerk, as secretary of the county excise board. It does not appear that any action on the part of the county excise board, on the proceedings furnished and certified to it by the board of education, was taken until in the month of November following. After the election in said school district, and after the transcript of the proceedings had been furnished the county excise board, it was learned by the board of education that, as the result of the decision of this court, on July 11, 1916, in case Board of Commissioners of Creek County et al. v. W. L. Alexander, State Treasurer, 58 Okla. 128, 159 Pac. 311, said school district was entitled to receive from the state treasurer, through the county treasurer of Creek county, the sum of $48,000, then on hand, as its portion of the gross production tax, and the apportionment of which had theretofore been in litigation. Shortly after the decision in said case, and before any action was taken by the excise board upon the proceedings of the board of education, the latter, at a meeting duly called, passed a resolution which, after reciting the great need of a high school building, and the claim that the school district would, during the current year, receive as its proportion of the gross production tax on oil and gas, paid to the state auditor, about $65,-000, which, according to said resolution, it was said "can be utilized in the aid of the public schools in Sapulpa," and which fund would not be required for the running expenses of the public schools of said school district for the current year, declared that the funds so received during said year should be set aside and placed in a fund designated as "high school building fund," to be thereafter used for the construction and equipment of a high school building within the city of Sapulpa. Pursuant to said resolution, an amended financial statement was published, showing that the school district desired to raise the sum of $150,000 for a high school site and building, and it is here contended

that said board of education had set apart the gross production tax accruing to it, for the purpose of raising said fund. From the petition and joint answer of the defendants, other than of the county superintendent, who filed a separate answer, as we understand them, it seems that at the meeting of the county excise board, held on or about the 1st day of November, 1916, all members except the county treasurer being present, the original and amended estimate of the board of education came on for consideration, and, upon motion duly made by the superintendent of public instruction and seconded by the county clerk, said estimate was allowed and approved, and the county clerk was directed to make a record thereof, and to certify the same as required by law. Some days thereafter, it appears, an attempt was made to rescind the previous action of the excise board. Just what occurred on this occasion is not clear, though from the joint answer of the defendants it seems that, at the original meeting of the excise board, the county attorney had advised the board against approving the action of the board of education in setting aside the gross production tax as a high school building fund, claiming that said action of the board of education was illegal in that said gross production tax could not be used for such purpose. The joint answer of said defendants, signed by the county attorney, charges that, notwithstanding the objection urged, the action of the board of education was approved by the excise board by a majority vote of its members; that, at a subsequent meeting of the board, the date thereof not being given, and with but three members present, the matter of approving the amended estimate of the board of education again came on for hearing, and the members present were advised by said county attorney that the previous action of the board in allowing and approving the amended estimate of the board of education, in which the gross production tax was placed to the credit of the high school building fund, was illegal, void, and of no effect. The following proceedings were had at said meeting, according to said answer:

"That thereafter J. E. Bruin, county treasurer, having to leave the city, made a statement to the excise board that whatever action was taken on the matter would be his act and he would concur in and approve any action whatsoever taken with reference to said amended estimate, and that the following morning, Gus L. Corey, county clerk, received a telegram from the said defendant J. E. Bruin, county treasurer, in which said telegram said county treasurer made the statement to place said gross production tax to the credit of the general fund for school purposes of said plaintiff for the years 1916 and 1917. That on said date of receiving said

telegram, defendants Gus L. Corey, county clerk, and Roy T. Wildman, county attorney, decided and did place the said gross production tax then to the credit of plaintiff in the general funds of said plaintiff for the purpose of paying the current expenses of plaintiff for the current years of 1916 and 1917, in addition thereafter made a levy of 2.45 mills under the amended estimate of plaintiff, for the purpose of raising funds for the payment of accrued interest on bonds and the retirement of bonds of plaintiff."

At the first meeting of said excise board, and at which it allowed and approved the action of the board of education, the county superintendent and county judge then present signed, as appears from defendants' answer, " * * * the approval in blank and handed the same to the clerk to enable him to carry out the orders of the board in certifying said statement to the county treasurer." This blank, containing the signatures of the absent officials, after the so-called second meeting, was used, as further appears in the answer, as follows:

"That thereupon the county clerk made out on the original blank, furnished and previously signed by the county superintendent and county judge, an estimate on which the gross production tax was set apart for current expenses for the years 1916 and 1917, and making the levy of 2.45 mills, as heretofore stated."

That the funds required for the support and maintenance of the schools for the ensuing fiscal year, as certified to the board, were necessary to carry on the schools, is not and was not questioned. That the proceedings of the board were valid in all respects is not denied, except in respect to the claim that the board of education had no authority to use the gross production tax for high school building purposes. The subsequent action of the county clerk and county attorney arose out of the mistaken belief that the board of education had no authority to use the gross production tax collected during the current year for the purposes declared by the resolution. It is unnecessary to devote space to a discussion of the regularity or the validity of the action of the county clerk and county attorney, had subsequent to the regular meeting of the excise board. From what has been seen, it is sufficient to say that the proceedings were a nullity.

The board of education, as we shall presently see, had full authority to use the gross production tax accruing to it during the current year, for the construction and equipment of a high school building. When it determined to use such tax for that purpose, the necessity of the levy for the support and maintenance of the schools of the district for the fiscal year, as certified to the board

remained as it was when the question was acted upon and finally determined by the vote of the electors of the district and the action of the board of education. Neither the officers of the excise board, who participated in the second meeting, nor the board itself, had authority to vacate and set aside the valid proceedings of the board of education, because of the action of the latter in setting aside the gross production tax for the current year as a high school building fund.

Under the act of April 2, 1915 (Sess. Laws 1915, pp. 319, 320), boards of education of cities of the first class are required, on or before the second Tuesday of May of each year, to prepare a budget for the amount of money that will be required to be raised by taxation for the support and maintenance of the schools of the school district controlled by such boards for the ensuing year. When it is determined that the assessed valuation of such school districts for the current fiscal year is not sufficient by a levy of five mills to create the fund, as determined in the budget, as prepared by virtue of section 1 of the act, the board of education shall determine the amount of the excess levy above the five mills necessary to raise the amount, as determined by the assessed valuation for the current fiscal year. Within ten days after the amount of such excess levy has been determined, the board is required to issue a call for and to hold an election in the month of May of the same year for the purpose of voting on said excess levy. If a majority of those voting shall vote in favor thereof, then it is made the duty of said board to attach to the estimate sheet, when making the estimate required by law, a transcript showing the record of the board of education, in calling the election, and the returns received by said board. It is then the duty of the county excise board, if an excess levy be required, according to section 3 of the act, " * * * to raise the amount of the estimate as approved by the board of education to make such excess levy in such an amount as will be required to produce the amount of the approved estimate, not to exceed, however, the amount of such excess levy as had been voted as provided by section 2 of this act." As no question is made that the amount of the estimate certified to the excise board was unjust or unreasonable, or that the proceedings of said board were invalid, other than as arises out of the action of the board in setting aside the gross production tax for building purposes, it is obvious that the attempted action of the excise board at its second meeting, aside from the question of the regularity of said meeting, was invalid.

For what purpose may the proceeds of the gross production tax be used? The gross revenue act of March 11, 1915 (Sess. Laws 1915, pp. 170-196), at page 184 provides that one-half (one per cent.) of the revenues collected under the provisions of said act shall be by the state treasurer distributed to the county treasurer of the counties from whence the same was collected, in proportion to the school enumeration of such counties, and same shall be distributed in aid of the common schools of such counties upon a per capita basis, as are other common school funds. The gross production act of February 14, 1916 (Sess. Laws 1916, pp. 102-110), provides that, of the sum levied and collected, five mills shall be in aid of the common schools of the county from whence the oil or gas is produced. In both acts, it will be seen, the tax is to be used in aid of the common schools. It was for this purpose that the board of education set aside the funds apportioned to it by the county treasurer. By statute each city of the first class constitutes an independent school district. The public schools of each city organized pursuant to law are made a body corporate, and as such possess the usual powers of corporations for public purposes, and may in its corporate name sue or be sued, and be capable of contracting or being contracted with, of holding and conveying such personal and real estate as it may come into possession of, by will or otherwise, or as is authorized to be purchased by statute. The board of education of any city of the first class, subject to the provisions of article 6, c. 219, Sess. Laws 1913, has the power to organize and maintain a system of graded schools; to establish a high school whenever, in the board's opinion, the educational interest of the city demands the same; and to exercise the sole control over the schools and school property of the city. All taxes collected for the benefit of the schools of said city are required to be placed in the hands of the treasurer, subject to the order of the board of education. Whenever it becomes necessary for the board of education of any school district, in which is included in whole or in part a city of the first class, to raise sufficient funds for the purchase of a school site or sites, or to erect or purchase and equip a suitable school building or buildings, or both, such board is authorized to borrow money, for which it is empowered to issue bonds bearing a rate of interest not exceeding 5 per cent. per annum, payable semiannually, as provided in section 19 of said article. From the power and authority conferred upon boards of education by article 6, c. 219, of the Session Laws of 1913, it is obvious that such boards have absolute control over the school funds of the district, and are expressly given the authority to establish

high schools, whenever in the opinion of the board the educational interest of the city demands the same, and to exercise the sole control over the schools and school property of the city. This is precisely what the board of education attempted by resolution to do. That is, it undertook by resolution to set apart the gross production tax accruing to the district for the current year, for the purpose of constructing and equipping a high school building. It would indeed be passing strange that such board should have the authority to borrow money and to issue bonds after an election had for that purpose, in order to raise funds for the purchase of a school site or sites, or to erect or purchase and equip suitable school buildings which by section vi, art. 6, p. 219, are pledged for the payment of the interest and principal of the bonds, as the same become due, and not have the authority to set aside or use cash on hand for that purpose. In other words, that school sites and school buildings and equipment could only be acquired and erected out of borrowed money, or the sale of school bonds, and from no other source. The statute contemplates that a bond issue may be resorted to only when it "becomes necessary" to raise the money in that manner. The power to purchase sites and to erect or purchase and equip school buildings is not, therefore, dependent on the board being compelled to borrow money therefor, but exists and may be exercised whenever there are funds on hand that may lawfully be used for that purpose.

We know of no way in which the common or public schools of a district may more effectually be aided than by the purchase of desirable sites and the erection of suitable and adequate buildings and the equipment thereof. When this is done, the common schools are "aided," within the meaning of the statutes describing for what purpose the gross production tax may be used. The word "common," as ordinarily applied to schools, bears the broadest and most comprehensive significance. They are "common" to children in the sense that "public" highways are common to all persons who choose to ride or drive thereon, observing only the law of the road. People ex rel. Brooklyn Children's Aid Society v. Hendrickson, 54 Misc. Rep. 337, 104 N. Y. Supp. 122; People v. Board of Education of the City of Brooklyn, 13 Barb. (N. Y.) 400. "Common schools" means, ordinarily, free common schools; the phrase "common schools" being synonymous with "public schools." Both have been defined by lexicographers and by judicial interpretation to mean free schools. In 25 A. & E. Enc. Law. it is said:

"Common or public schools are, as a general rule, schools supported by general taxation, open to all of suitable age and attainments, free of expense, and under the control of agents appointed by the voters."

In Black's Law Dictionary, common schools are defined to be:

"Schools maintained at the public expense, and administered by a bureau of the state. district or municipal government, for the graded education of the children of all citizens without distinction."

Mr. Anderson, in his Law Dictionary, says:

"Common or public schools are schools supported by general taxation, open to all, free of expense, and under the control of agents appointed by the voters."

Bouvier, in his Law Dictionary, says that "common schools" are schools for general elementary instruction, free from all the public. Rapalje & Lawrence defined "common schools" to be public or free schools, maintained at public expense, for the elementary education of children of all classes. Among the decided cases, defining generally the meaning of the words "common schools," see School Dist. No. 20, Spokane County, v. Bryan, 51 Wash. 498, 99 Pac. 28, 20 L. R. A. (N. S.) 1033; Board of Education v. Dick, 70 Kan. 434, 78 Pac. 812, 814; Jenkins v. Inhabitants of Andover, 103 Mass. 94; Merrick v. Inhabitants of Amherst, 12 Allen (Mass.) 500; Roach v. Board, etc., of St. Louis Public Schools, 77 Mo. 484; Collins v. Henderson, 11 Bush (74 Ky.) 74; Irvin v. Gregory, 86 Ga. 605, 13 S. E. 120; Roach v. Board, etc., St. Louis Public Schools, 7 Mo. App. 567; People v. Board of Education of Brooklyn, 13 Barb. (N. Y.) 400; In re Harris, 58 Misc. Rep. 297, 109 N. Y. Supp. 983; Jeffries v. Board of Trustees of Columbia Graded Common Schools, 135 Ky. 488, 122 S. W. 813.

From what has been said it is clear that the gross production tax on oil and gas imposed by the Legislature and collected by the state auditor, a part of which is distributed to the counties from which the oil and gas tax was produced, may be used by boards of education of independent school districts, comprised of cities of the first class, and including territory outside of the limit of such cities, for the purpose of acquiring a building site and erecting thereon a high school building, and i equipping the same, as such high school forms a part of the "common" or public schools of the district, being open to all eligible white children possessing the necessary educational attainments, free of tuition, and under the control of the board of education. No other view is tenable under the Constitution or statutes of the state. It follows that the action of the board of education of the city of Sapulpa, in setting aside to a high school building fund moneys received by it and forming a part of the gross production tax paid by the state treasurer to the county treasurer of Creek county for the current year, was a valid exercise of authority, and that the subsequent action of the county excise board, in attempting to review, vacate, and set aside said action, and in applying said funds to the current expenses of maintaining the schools contrary to the wishes of the board of education, was unauthorized and void.

We express no opinion as to the power of the board to set aside revenues accruing to it from the gross production tax, in excess of that on hand, and which may accrue for the balance of the current year. What use may be made of the revenues received beyond the year does not appear to be involved in the present action.

It is obvious that the excise board has both misconstrued its duties and transcended its power; because of which it is ordered that a peremptory writ of mandamus issue, commanding said board to do and perform the duties enjoined upon it by law, agreeable to the action had at its first meeting in November, 1916, to the end that the action of the board of education, and of the voters of the school district, may in all things be carried out and performed, and that the assessment required be extended upon the tax rolls for the year 1916 on the taxable property of the school district.

All the Justices concur.