**BOARD OF CO. COM'RS et al. v. SCHOOL DIST. NO. 19, CARTER CO.**

No. 16589—Opinion Filed June 1, 1926.

**1. Schools and School Districts—"School Population of County."**

The school population of the county under the law of the state consists of all persons of school age, whether of the white or negro race.

**2. Same—County's Share of Gross Production Tax—Apportionment Among Schools.**

Under section 9822, C. S. 1921, one-sixth of the gross production tax, as therein provided, must be delivered by the State Auditor to the county treasurer to be credited to the common school fund of the county in proportion to the school population of such county; that is, the credit shall be entered showing the amount each one of school age is entitled to by an equal division of such fund; and under section 10315, C. S. 1921, the county superintendent of public instruction is charged with the duty of apportioning this fund among the school districts and parts of districts in the county; and when this is done, it is the duty of the of the county treasurer to turn over to each treasurer of the respective independent school districts, subject to the use of the board of education of such district, the full amount so apportioned, and it is no defense for not so doing that the school or schools of the district had been otherwise financed.

(Syllabus by Threadgill, C.)

Commissioners' Opinion, Division No. 3.

Error from District Court, Carter County; Asa E. Walden, Judge.

Action by School District No. 19, Carter County, against the Board of County Commissioners of Carter County, and S. F. Haynie, Treasurer of Carter County, to recover money arising from the gross production tax for school purposes. Judgment for plaintiff, and defendants appeal. Affirmed.

F. M. Dudley and Hodges & Schenk, for plaintiffs in error.

R. L. Disney and H. C. Potterf, for defendant in error.

Opinion by THREADGILL, C. It appears from the record that school district No. 19, of Carter County, Okla., consists of two distinct schools: one for white children, having the greater number of scholastics; the other for negro children, being the separate school under section 10569, Compiled Statutes 1921. From July 1, 1918, to July 1, 1924, the county treasurer of Carter county received from the State Auditor, from the gross production tax of the state for school purposes, in said school district, the sum of $246,239.14, and delivered to the treasurer of said district the sum of $211,822.39 of said tax, leaving the sum of $34,416.75, in the hands of said county treasurer, and which he refused to pay over to the treasurer of said school district on the theory that the distribution should be based upon the white scholastic population alone, since the negro school was provided for by ad valorem taxes assessed against the whole county, being a different method than that provided for the support of the white schools. The school board of district No. 19 did not agree with the county treasurer's theory, but contended that the basis for the distribution of the gross production tax should be the entire scholastic population, both whites and blacks, and upon this theory brought this action against the county and its treasurer to recover the $34,416.75 with six per cent. interest in the sum of $6,201.74, making the full amount claimed $40,618.50. It is agreed that if the county's theory is correct, the action should fail, but if the school district's theory is correct, the action should prevail. Several school districts of the county were permitted to interplead, and the issues were made up on the theories above stated, and the facts were stipulated and the cause tried to the court on January 16, 1925, and resulted in a judgment in favor of plaintiff, school district No. 19, for the amount claimed, and defendants have appealed urging a review and reversal of the judgment.

Defendants contend, in effect, that where the separate school in a district had already been maintained by ad valorem taxes, it is

not entitled to share in the distribution of the gross production tax, and where the majority school in such district has already received its part of the gross production tax, or that part of said tax based upon its scholastic population, it is not entitled to receive and expend for its own separate use that part of the gross production tax based upon the population of the minority, or separate school. In other words, defendants contend that the board of education of plaintiff, school district No. 19, has no right to the money in controversy because the white school in the district had already received its part of the gross production tax, according to its scholastic population, and the negro school in the district had been financed by the county without the assistance of any part of the gross production tax.

Defendants then proceed to discuss at some length the proper method of distributing the gross production tax, and conclude that the separate school population should not be taken into consideration in the distribution for the reason it is maintained by ad valorem tax assessed against and collected from the whole county.

In considering defendants' contention, we think they presume too much in saying that said majority school "is not entitled to receive and appropriate for its own separate uses, a portion of the gross production fund based on the population of the minority school in such distribution." There is nothing in the pleadings or agreed statement of facts to justify this assumption. Suppose both schools in the district had been financed without receiving any assistance from the gross production tax; then, according to defendants' argument, the school district would not be entitled to any part of the gross production tax received from the State Auditor for the schools of the county. If the money belongs to the school district, it is no defense to an action to recover it from the county and its treasurer for them to question the direction the school board may give it after recovering it. If the school board should not distribute it and use it for the purpose provided by law, this would be a question to be determined at that time, and not in an action to recover the money from the county. We do not think that the school district waives any right to claim and recover its part of the gross production tax because it has other funds for financing its school or schools for any period of time, nor would this situation form the basis of a defense for the county or its treasurer holding the gross production tax, or any part thereof, in trust for such school district.

The Constitution, art. 11, section 3, provides that all school funds shall be "apportioned among and between all the several districts, and no part of the fund shall be diverted from this purpose or used for any other purpose than the support and maintenance of common schools for the equal benefit of all the people of the state." The separate school provided for by law is as much a part of the common school system of the state as the majority school, and it may be a white school as well as a negro school (section 10569, Compiled Statutes 1921; Railway Co. v. Lane, 69 Okla. 145, 170 Pac. 502), and while there is a different method in assessing and collecting ad valorem taxes for the maintenance of the separate from that of the majority school, there is no provision of the statutes to indicate any difference in their relation to, or rights in, the gross production tax. It, therefore, follows that the distribution should be based upon the whole scholastic population of the county when the State Auditor sends to the county treasurer for the schools of the district its part of the gross production tax for that purpose. Section 9822, Compiled Statutes 1921. Then the county superintendent of public instruction "shall apportion the same, together with the unapportioned county school fund in the county treasury, among the school districts and parts of districts in such county in the ratio of the number of persons of school age who are entitled to receive the same, residing in each district, or part of district, as shown by the last annual report of the several clerks of such district and part of districts." Section 10315, Compiled Statutes 1921.

Defendants do not defend on the ground that the amount sued for was not received from the State Auditor, or was not apportioned to the plaintiff school district No. 19 by the county superintendent, but their defense is that the majority school in the district had received its part of the gross production tax, and the minority school had been supported by ad valorem taxes collected from the county, and conclude that the district should not recover for any purpose or on any theory. It is obvious from the record before us, that the money in controversy was a part of the gross production tax received by the county treasurer in aid of the common schools of Carter county, and we may presume was apportioned to the plaintiff school district No. 19 by the county superintendent. It did not belong to the county, and, under the provision of the Constitution above quoted, could not be diverted to any other use than in aid of the schools of said district. The board of education of the district had the right to

the possession and use of this money in aid of its schools. Board of Education of Sapulpa v. Corey, County Clerk, 63 Okla. 178, 163 Pac. 949.

We have carefully read the briefs of the parties to the case, as well as the briefs amici curiae filed by Tulsa, Okmulgee, and Muskogee counties, and while we must commend the attorneys for their great care, earnestness, and erudition, in laying out and discussing the subject, we think they extended the argument far beyond the range of the law governing the case and the inferences to be drawn therefrom. The language of the Constitution and statutes controlling, is plain and unambiguous, and construction seems to be a waste of time, but if construction were necessary, we cannot see where it is available to defendants, since it is admitted that the money involved was a part of the apportionment of the gross production tax sent by the State Auditor to the county treasurer and apportioned by the county superintendent of public instruction for the plaintiff, school district No. 19. It did not belong to the county at the time it was received, and we cannot see how it could belong to the county to take the place of the ad valorem taxes collected from the county to support the separate schools in district No. 19. There is no law for this exchange, and we do not think there is any construction that would justify this contention. It was money set apart for public school purposes, and under the Constitution could not be diverted to any other use, and as to what particular purpose this money would be used by the school board of plaintiff, school district No. 19, is not a question for the defendants to raise as a defense for not paying the money over to the treasurer of said district.

The judgment of the trial court is therefore affirmed.

By the Court: It is so ordered.

Note.—See under (1) 35 Cyc. p. 813 (Anno); 24 R. C. L. p. 657. (2) 35 Cyc. p. 1591.