## BOARD OF ED., CITY OF SAPULPA, v. BOARD OF COM'RS OF CREEK CO.

### No. 17824. Opinion Filed Oct. 11, 1927.

(Syllabus.)

**1. Trial—Right to Findings of Fact—Waiver.**

The provisions of section 556, C. O. S. 1921, relative to the duty of the trial court to make findings of fact, when properly requested, is mandatory, but such rights may be waived.

**2. Schools and School Districts—Apportionment of Common School Fund—Equal Rights of Separate Schools According to Scholastic Enumerations.**

Not only are the separate scholastic enumerations to be considered in the apportionment of funds derived from the common school fund as aid, but such separate schools are entitled to equal benefit in the expenditure of such funds by reason of section 3, art. 11, of the Constitution, and section 10493, C. O. S. 1921, et seq., providing for the enumeration of all school children in the state, including both negroes and whites, sections 10236 and 10237, C. O. S. 1921, providing for the apportionment of the state common school fund to the various counties, and section 10315, C. O. S. 1921, providing for the apportionment of the common school fund in various school districts.

Error from District Court, Creek County; Fred A. Speakman, Judge.

Action by Board of Education of the City of Sapulpa against the Board of County Commissioners of Creek County to recover on certain separate school warrants. Judgment for defendant, and plaintiff appeals. Affirmed.

George L. Burke, for plaintiff in error.

W. F. Pardoe, Co. Atty., and Leroy J. Burt, Asst. Co. Atty., for defendant in error.

Edwin Dabney, Atty. Gen., Randell S. Cobb Asst. Atty. Gen., amicus curiae.

RILEY, J. The plaintiff in error, as plaintiff, brought this action against the board of county commissioners of Creek county to recover on certain separate school warrants, totaling, with interest, $21,749.-56. These warrants were issued for the fiscal years 1922-23 and 1923-24 against the approved estimates for said years for the maintenance and improvement of the separate (negro) schools in school district No. 33, Creek county.

The defendant answered that school district No. 33 was and is an independent district and that schools are there maintained for both white and colored children and that the separate schools are the colored schools; that plaintiff had in 1925 obtained a certain judgment against the defendant for the sum of $41,137.25, that being the portion of state and county aid and gross production tax to which said school district was entitled, based upon the negro scholastic enumeration of the district covering years from March, 1919, to January, 1925; that in said judgment the plaintiff recovered $20,584.43, for the years 1922, 1923, and 1924, the years in which the warrants herein sued upon were issued; that the negro schools were a part of the common schools of the state and that the plaintiff should have applied the funds secured by the judgment, or so much thereof as was necessary, to take up the separate school warrants issued and sued upon, but that plaintiff used all of the funds derived by the judgment for the benefit of the white schools exclusively in violation of section 3, art. 13, and section 3, art. 11 of the Constitution of Oklahoma.

The plaintiff replied, admitting the judgment of May 2, 1925; that the same was purchased out of the sinking fund of said school district; that the money was applied on the general fund; denied alleged violation of the provisions of the Constitution, and denied that said funds were used exclusively for the white schools.

The court rendered judgment for defendant, and the evidence shows that the funds derived from the judgment of May, 1925, were used exclusively for the use and benefit of the white schools, and that the plaintiff recovered from the defendant in the judgment of May, 1925, state and county aid and gross production tax accruals for the year 1922 the sum of $6,596.48, for 1923 the sum of $2,791.57, and for 1924 the sum of $11,016.38, the said amounts being based upon the negro scholastic enumeration in said school district for said years.

School district No. 33 city of Sapulpa, is an independent school district and maintained schools for the negro children as separate schools. Therefore the supervision of the said separate schools, under the stat-

utes, is in the board of education of said district.

As the third assignment of error plaintiff sets out that it made a request in the progress of the trial and before testimony was taken for findings of fact and conclusions of law as provided by section 556, C. O. S. 1921. As decided in Smith v. Harrod, 29 Okla. 3, 115 Pac. 1015, and Allen v. Wildman, 38 Okla. 652, 134 Pac. 1102, the provisions of section 556 are mandatory, and the failure of the court to so act when properly requested denies a substantial right and is reversible error. Yet this right may be waived. Fitzgerald & Laird v. Caldwell, 126 Okla. 162, 259 Pac. 209, decided August 5, 1927.

The plaintiff in error says in its brief:

"However, we hope the court will pass upon the question raised by the defendant, since, so far as we know, the direct question has never before been submitted to this court."

Hence the error is waived.

The only question on appeal is: Do the funds arising from gross production for school purposes go to the general fund of the district, to be applied to the payment of schools generally, or does that proportion of said gross production tax obtained on the basis of the colored scholastics go exclusively to the separate or colored schools?

Plaintiff contends that all money secured by reason of the gross production tax to an independent district for both the majority and separate scholastics, may be expended as the board may direct, either for the benefit of the separate or majority schools.

The question, as to whether these funds, levied and apportioned, may be, as in the instant case, applied exclusively in aid of the majority schools of the state, or whether the separate school (which is usually the negro school) is entitled to participate according to its scholastic enumeration in the expenditure of the funds, is a matter of considerable importance, for the interest from the permanent school fund of the state is involved, the state ad valorem and gross production tax levied in support of common schools is affected, as well as the levy of counties for the support of separate schools.

In support of the contention against the counties is cited the memorandum opinion of School District No. 68, Bryan County, v. Board of County Commissioners, Bryan County, 122 Okla. 116, 251 Pac. 1118, which was based on Board of County Commissioners, Carter County, v. School Dist. No. 19. Carter County, 119 Okla. 20, 248 Pac. 324. There is no doubt as to the correctness of the Carter County case. It involved an independent district, and the independent district is entitled, under the law, to all such funds for both schools, as in such districts the separate schools are under the control and supervision of the board of education, but the separate school in a common school district is not under the control or supervision of the school board, but under the control and supervision of the county superintendent and board of county commissioners.

By virtue of the Act of Congress approved June 16, 1906, 34 Stat. L. 267 (the Enabling Act), sections 16 and 36 in every township in Oklahoma Territory were devoted to the common school fund. A fund of $5,000,000 was appropriated by the federal government in lieu of sections 16 and 36 of the Indian Territory, and the fund was augmented under section 11 of the Act by devoting a five per cent. of the proceeds of the sales of public lands.

Sections 1, 2, and 3 of article 11 of the Constitution of Oklahoma accepted said appropriations and grants of land, and by solemn obligation pledged the faith of the state to hold the trust inviolate **"for the use and benefit of the common schools of said state"** by saying that said fund "shall be used and applied each year for the benefit of the common schools of the state, and shall be, for this purpose, apportioned among and between all the several common school districts of the state in proportion to the school population of the several districts, and no part of the fund shall ever be diverted from this purpose or used for any other purpose than the support and maintenance of the common schools for the equal benefit of all the people of the state."

Not only is the phrase "for the equal benefit of all the people" significant, but in addition the separate schools are a part of the common schools of the state.

Section 5, art. 1, of the Constitution reads as follows:

"Provisions shall be made for the establishment and maintenance of a system of public schools, which shall be open to all the children of the state and free from sectarian control; and said schools shall always be conducted in English; provided, that nothing herein shall preclude the teaching of other languages in said public schools: And provided, further, that this shall not be construed to prevent the estab-

lishment and maintenance of separate schools for white and colored children."

Section 3, art. 13, of the Constitution reads:

"Separate schools for white and colored children with like accommodations shall be provided by the Legislature and impartially maintained. The term 'colored children.' as used in this section, shall be construed to mean children of African descent. The term 'white children.' shall include all other children."

This court. in Board of Education of Sapulpa v. Corey, 63 Okla. 178, 163 Pac. 949, quoted from Black's Law Dictionary the definition of "common schools" as follows:

"Schools maintained at the public expense and administered by a bureau of the state, district or municipal government. for the graded education of the children of all citizens without distinction."

And from Anderson's Law Dictionary:

"Common or public schools are schools supported by general taxation, open to all, free of expense, and under the control of agents appointed by the voters."

In C., R. I. & P. Ry. Co. v. Lane, 69 Okla. 145, 170 Pac. 502, this court held:

"Separate schools are a part of the 'common schools' or the system of free public schools of the state."

Then it is self-evident that, the separate schools being a part of the common schools, they are entitled, under the Enabling Act and sections 1, 2, and 3, art. 11, of the Constitution, and the solemn pledge thereof, to the "equal benefit" of the permanent school fund of the state.

In C., R. I. & P. Ry. Co. v. Lane, supra, it was said:

"Separate schools under the law do receive aid from the state out of common school fund (section 2, art. 9, c. 219, Session Laws of the state of Oklahoma 1913, and sections 7702 and 7694 Rev. Laws of the state of Oklahoma, 1910), and would under the definition of 'common schools' be a part of the common schools of the state. Our court, speaking through Justice Williams in the case of Olson v. Logan County Bank, 29 Okla. 391, 118 Pac. 572, construing section 3, art. 13, Constitution, supra, says:

" 'The separate schools required to be maintained by section 3, art. 13, are a part of the system of free schools provided for in section 1 thereof.' "

"It, therefore, appears to be settled both by statute and construction that 'separate schools' are a part of the common schools and free public schools of the state."

In the case of Board of County Commissioners, Carter County, v. School District No. 19, 119 Okla. 20, 248 Pac. 324. it was said:

"The separate school provided for by law is as much a part of the common school system of the state as the majority school. and it may be a white school as well as a negro school (section 10569, C. O. S. 1921; Railway Co. v. Lane, 69 Okla. 145, 170 Pac. 502). and while there is a different method in assessing and collecting ad valorem taxes for the maintenance of the separate from the majority school. there is no provision of the statutes to indicate any difference in their relation to, or right in, the gross production tax."

We hold, therefore, that not only are the separate scholastic enumerations to be considered in the apportionment of funds derived from the common school fund as aid, but such separate schools are entitled to equal benefit in the expenditure of such funds by reason of section 3, art. 11, of the Constitution, and section 10493, C. O. S. 1921, et seq., providing for the enumeration of all school children in the state, including both negroes and whites, sections 10236, and 10237, C. O S. 1921, providing for the apportionment of the state common school fund to various counties, and section 10314, C. O. S. 1921. providing for the apportionment of the common school fund to various school districts.

It is to be noted that section 10322, C. O. S. 1921, provides:

"The provisions of this article shall not be construed as limiting the operation of law providing for the formation of separate districts for white and colored children, but the formation of any district under such law shall be construed to be the formation of a new district with like effect as though such new district was formed in territory unorganized for school purposes."

Which is to say, the formation of any separate school shall be construed to be the formation of a new school district with like effect, etc.

By virtue of sections 10574, 10577, 10583, C. O. S. 1921, the county treasurer is the custodian of the funds of the separate schools, except those separate schools located within independent school districts as provided for under section 10404, C. O. S. 1921, wherein by reason of section 10574 the funds so received for the separate schools must be paid by the county treasurer to the treasurer of such independent districts.

Section 10583, C. O. S. 1921, provides for the expenditure of funds for salaries and

expenses for separate schools, except those located in independent districts, by warrants upon the county treasurer, drawn by the county clerk to be countersigned by the county superintendent.

The gross production tax levied in aid of common schools, by virtue of section 9822 C. O. S. 1921, the state ad valorem tax levied in aid of common schools, by virtue of section 9690, C. O. S. 1921 and county common school fund are apportioned on the same basis as the permanent school fund and for the same purposes and uses.

While the case of Jones v. Board of Education of Muskogee, 90 Okla. 233, 217 Pac. 400, concerns an ad valorem school levy, we think the same is analogous and applicable under the system and policy as applied to the funds here involved. Therein the rule is stated:

"Funds created and set apart for the support and maintenance of the independent or white schools of said independent school district cannot be expended and used for the support and maintenance of the separate or colored schools."

The converse, of course, is true, and the same principle is applicable to income from sources herein considered.

Section 10574, C. O. S. 1921, requires a special budget for the separate schools.

When the plaintiff school board sued and secured the gross production tax fund, county and state aid funds, based on the negro scholastic enumeration and, as disclosed by the evidence herein, used said funds for the exclusive benefit of the white schools, every taxpayer in every other district in the county was penalized. The county tax burden for the separate schools was intended to be lessened by the benefits derived from the use of said funds.

The case of Board of Education of Sapulpa v. Corey, supra, cited by plaintiff in error under its contention that funds may be commingled in expenditure, does not seem to us to support that view. Nowhere in the case is considered the commingling of such funds.

Funds received by plaintiff in its judgment, based on the negro scholastic enumeration, used to pay expenses of the majority or white school funds, were evidently not listed in the proper item in a separate budget for the separate schools and devoted to retire warrants for the separate schools.

The judgment of the district court is affirmed.

BRANSON C. J., MASON, V. C. J., and HARRISON, LESTER, HUNT, CLARK, and HEFNER, JJ., concur.

PHELPS, J., absent, not participating.

Note.—See under (1) 38 Cyc. pp. 1954, 1955 (Anno). (2) 35 Cyc. p.822.