## BOARD of ED., CITY OF MUSKOGEE, v. BOARD OF COM'RS, MUSKOGEE COUNTY.

No. 18913.   Opinion Filed March 26, 1929.

Rehearing Denied Dec. 10, 1929.

A. L. Beckett and Kelly Brown, for plaintiff in error.

S. H. Lattimore, Co. Atty., Francis Stewart, T. L. Gibson, and Eric Haase, for defendant in error.

DIFFENDAFFER, C.   The parties here are in the same relation as in the trial court.

The city of Muskogee, as an independent school district, conducts two distinct schools, one for white children, having the greater number of scholastics, the other for negro children, being the separate school under section 10569, C. O. S. 1921.   The district is known as independent school district No. 20. This action is in some respects the same character as Board of County Com'rs et al. v. School District No. 19, Carter Co., 119 Okla. 20, 248 Pac. 324.   The difference is that there only state aid funds derived from gross production tax were involved, while, in the instant case, plaintiff sues to recover the sum of $99,118.16, alleged to belong to the school district, arising from state and county aid of all kinds, which should have been apportioned and paid over to the treasurer of said district as its share of such funds represented by the negro scholastics (negro school children), which, instead of being paid over to the treasurer of the independent school district, was erroneously placed in the general fund of the county, and used in reducing the amount of ad valorem taxes of the county necessary to be raised for the support of separate schools throughout the county, which sum plaintiff alleged it had never received.   The years during which this is alleged to have occurred were from 1917 to 1926. inclusive. Interest thereon in the sum of $28.192.66 is also claimed.   The petition was filed December 7, 1926.

Defendant answered by general denial, denied specifically that plaintiff had failed to receive the funds collected by the county treasurer and alleged to belong to and be due plaintiff, and specifically alleged that plaintiff had duly received all such funds. The bar of the statute of limitation as to all items claimed to have accrued prior to December 7, 1923, was pleaded.   Trial was had to the court, and finding of facts and conclusions of law were made, and judgment rendered for defendant.   From this judgment, plaintiff appeals.

It is not contended that the county treasurer did not collect and receive the various amounts claimed, nor that such sums did not represent the proper apportionment of state and county aid which should have been paid over to the treasurer of the district, as representing the negro scholastics (negro school children) residing within the limits

of independent school district No. 20. The proof shows conclusively that he did. The finding of fact on that point is:

"The court, being sufficiently advised in the premises, finds and holds that there was apportioned by the state of Oklahoma from the years 1917 to 1926, inclusive, to and for the use and benefit of the majority schools of Muskogee county, the sums set out in the plaintiff's petition."

In Board of County Commissioners v. School District No. 19, Carter County, 119 Okla. 20, 248 Pac. 324, it was held:

"Under section 9822, C. S. 1921, one-sixth of the gross production tax, as therein provided, must be delivered by the State Auditor to the county treasurer to be credited to the common school fund of the county in proportion to the school population of such county; that is, the credit shall be entered showing the amount each one of school age is entitled to by an equal division of such fund; and under section 10315, C. S. 1921, the county superintendent of public instruction is charged with the duty of apportioning this fund among the school districts and parts of districts in the county; and when this is done, it is the duty of the county treasurer to turn over to each treasurer of the respective independent school districts, subject to the use of the board of education of such district, the full amount so apportioned, and it is no defense for not so doing that the school or schools of the district had been otherwise financed."

The Carter County Case has three times been approved by this court. In Board of Ed. of Sapulpa v. Board of Com'rs of Creek Co., 127 Okla. 132, 260 Pac. 22, it was held:

"Not only are the separate scholastic enumerations to be considered in the apportionment of funds derived from the common school fund as aid, but such separate schools are entitled to equal benefit in the expenditure of such funds by reason of section 3, art. 11 of the Constitution, and section 10493, C. O. S. 1921, et seq., providing for the enumeration of all school children in the state, including both negroes and whites, sections 10236 and 10237, C. O. S. 1921, providing for the apportionment of the state common school fund to the various counties, and section 10315, C. O. S. 1921, providing for the apportionment of the common school fund in various school districts."

In the body of the opinion, it is said:

"There is no doubt as to the correctness of the Carter County Case. It involved an independent district. and the independent district is entitled. under the law, to all such funds for both schools, as in such districts the separate schools are under the control and supervision of the board of education."

The Carter County Case is recognized as the law in School District No. 68, Bryan Co. v. Bd. of Co. Com'rs, Bryan Co., 122 Okla. 116, 251 Pac. 1118.

In School Dist. No. 7, Creek Co., v. Bd. of Co. Com'rs, Creek Co. (decided Feb. 7, 1928) 135 Okla. 1, 275 Pac. 292, wherein a common school district sought to recover similar funds from the county, Mr. Justice Hefner, speaking for the court, in the body of the opinion says:

"It is true that in the Carter County Case the county treasurer was required to pay over to the treasurer of the school district all of the gross production tax received by him, including the amount that was held by him derived from the scholastics of the separate school. This was a correct holding because school district No. 19 composes the city of Ardmore and is an independent district."

So the rule announced in Board of Co. Com'rs, Carter Co., v. School Dist. No. 19, Carter Co., supra, appears to have been well settled at the time the opinion in School District No. 7, Creek Co., v. Creek Co., supra, was written. However, the reasoning in the Carter County Case is somewhat weakened in the supplemental opinion in School District No. 7, Creek Co., v. Creek Co., supra, written by Mr. Justice Lester on rehearing (opinion filed Dec. 4, 1928), reported in 135 Okla. 1, 275 Pac. 292. Therein the court holds, in effect, that the county superintendent, in apportioning the funds derived from state aid, and the county treasurer in distributing the same, are state agencies, and in nowise are they under the control or supervision of the board of county commissioners, and the opinion concludes as follows:

"Under the allegations of plaintiff's petition, if the state agencies acted erroneously, such acts will not enable plaintiff school district to recover a money judgment against the county."

The conclusion reached in the latter case, in the original opinion by Mr. Justice Hefner, is undoubtedly correct. It is therein clearly pointed out that, under the law, a common school district as such has no right to the funds derived from state or county aid representing the separate scholastics (negro children of school age) residing within the district. Separate school must be provided and conducted for colored children residing within such districts, but this is done by and through the board of county commissioners. It was held in Board of Ed. of City of Sapulpa v. Bd. of Co. Com'rs, Creek Co., supra, that the separate schools are entitled to equal benefit in the expendi-

ture of such funds by reason of section 3, art. 11, of the Constitution, and section 10493, C. O. S. 1921, et seq.

The board of county commissioners is the only agency through which these funds can be paid out for the benefit of the separate scholastics residing within common school districts. In common school districts, where the colored children are in the majority, the funds derived from state and county aid are handled in exactly the same manner as are the funds in other common school districts where the white children are in the majority. In independent school districts, where a separate school is maintained, these funds, like all other funds belonging to the district, are required by law to be paid over to the treasurer of the independent schools. Such was the holding in the Carter County Case. It was held in Board of Education, City of Sapulpa, v. Creek Co., supra, that when funds thus derived from state aid representing the colored scholastics is paid over to the independent school district in which the colored children reside, such funds must be used for the exclusive benefit of the separate or minority schools within such district, and it was also said:

"The county tax burden for the separate schools was intended to be lessened by the benefits derived from the use of said funds."

The facts in the instant case differ from those shown in the Carter County Case, supra. There only funds derived from the gross production tax were involved. Here funds derived from state apportionment from all sources, as well as county apportionment, are involved.

In the Carter County Case, supra, it appears that the white or minority school had received its part of the gross production tax according to its scholastic population, and that the negro school in the district had been financed by the county without the assistance of any part of the gross production tax. So that the district did not receive the money directly or indirectly; that is, the county took over and appropriated that part of the gross production tax which should have gone to the separate school, whether more or less than enough funds to conduct the separate school, and financed the separate school by ad valorem taxes assessed against the whole county; whether or not the county profited thereby does not appear.

Here the record discloses that the money derived from apportionment from negro scholastics was each year, during the period involved, paid into the county treasury and taken into consideration by the board of county commissioners each year in making up the budget for the separate school in the city of Muskogee. It is shown that the separate school got the benefit of all the money representing the negro scholastics within the district. The apportionment, both state and county, was first appropriated, and whatever additional revenue was found to be necessary was provided for by ad valorem taxes. The first two years, prior to the act of 1919, payments were made direct to the teachers, employees, etc., of the separate schools of the district. Thereafter, the county superintendent has drawn warrants against the separate school fund and paid same over to the treasurer of the independent school district of Muskogee. This was not the direct way of paying over the apportionment representing the negro scholastics of the district contemplated by the law. The proper way was for the county treasurer to pay the money direct to the treasurer of the independent school district at the same time and in the same manner that the apportionment belonging to the majority or white school was paid, but, nevertheless, the separate school got the benefit of the money as effectively as if it had been paid directly to the treasurer of the school district by the county treasurer. Upon this phase of the case, the trial court made the following findings of fact:

"The court further finds that under a mistaken construction of the law, the various county superintendents of Muskogee county, during all of said years, apportioned said funds to the majority and minority schools of Muskogee county according to the number of scholastics, and certified such apportionments to the county treasurer, and said treasurer paid out to the support of said minority schools upon warrants drawn by said superintendent and the county clerk all that part thereof which had been by said superintendent apportioned to said minority schools, the amount so apportioned to said minority schools being apportioned as a lump sum."

And further:

"The court further finds as a fact that there was paid to the plaintiff herein, and that said plaintiff has received all that part of said funds which were apportioned to it by said superintendent during each and every of said years, and that no part of said money has ever been apportioned to said plaintiff which it did not receive from said treasurer."

And further:

"Further, it appears that all of the money which was apportioned by the county super-

intendent to the minority schools was paid out by warrant drawn by the county clerk and the county superintendent, and that no claim was ever filed with the board of commissioners against the same, nor any claim ever by them allowed against the same, nor did they ever assume dominion over this money for any purpose nor expend one dime thereof."

These findings are supported by the evidence, and are not seriously disputed.

This being the case, it would be manifestly unjust to require the county to again pay over this money to the independent school district. If the county should be held liable, and be required to again pay over to the district this vast sum of money, it is clear, under the holdings of this court in Board of Ed. of City of Sapulpa v. Board of Co. Com'rs of Creek Co., supra, that the money thus derived could only be used for the benefit of the separate schools of the district, and the county would thus be relieved to that extent of the necessity of raising funds by ad valorem taxes for the support of the separate schools of the district. No good purpose could be served thereby, and the county, would be injured to the extent of the costs of the litigation, including whatever sum might be paid out of the recovery for attorneys' fees and other expenses.

The journal entry of judgment prepared and signed by the trial judge contains the following:

"The court further holds that said money was transmitted by the School Land Department of the government of the state of Oklahoma to the county treasurer of Muskogee county from time to time to be held by him as a state agency, and to be paid out to said majority schools upon the apportionment of the county superintendent of Muskogee county (who was also a state agency for the purpose of making said apportionment), and that the minority schools of said county had no legal right to any of said money, and that said superintendent had no legal right to apportion any of same to said minority schools, nor had said county treasurer any legal right to pay any part thereof for the support of said minority schools, even though so apportioned by said county superintendent (he being charged with knowledge of the law that all of said money belonged to said majority schools)."

The above paragraph is clearly wrong and in direct conflict with the holding of this court in Board of Ed. of Sapulpa v. Bd. of Co. Com'rs of Creek Co., supra, and while the judgment of the trial court should be affirmed, that portion thereof last above

quoted should be, and is hereby, disapproved, and the judgment modified accordingly.

The judgment should be, and is hereby, modified by striking therefrom the holding last quoted, and as thus modified should be, and is hereby, affirmed.

TEEHEE, HERR, HALL, and JEFFREY, Commissioners, concur.

By the Court: It is so ordered.