## BOARD OF COM'RS OF OKMULGEE CO. v. BOARD OF ED., CITY OF OKMULGEE.

No. 18707. Opinion Filed Jan. 7, 1930.

Commissioners' Opinion, Division No. 2.

C. M. Gordon, Asst. Co. Atty., and A. N. Boatman, Co. Atty. (Redmond S. Cole, on the brief), for plaintiff in error.

A. L. Beckett and Creekmore Wallace, for defendant in error.

DIFFENDAFFER, C. This action was commenced by defendant in error, hereinafter referred to as plaintiff, against plaintiff in error, hereinafter referred to as defendant, to recover $69,093.78, together with interest thereon in the sum of $22,954.83. The principal sum was alleged to be due and owing to plaintiff and arising from state and county aid from the common school fund, which should have been apportioned by the county superintendent and paid by the county treasurer to plaintiff during the years 1915 to 1922, inclusive, as represented by the negro or separate scholastics residing within plaintiff district, and which is alleged not to have been done. There is no controversy over the correctness of the amount of the principal sum. Judgment was for plaintiff, and defendant appeals. The principal sum sued for included the apportionments accruing by reason of the separate scholastics of the district for the years 1915 to 1919, inclusive. As to all apportionments of this class accruing prior to the enactment of chapter 28, Session Laws 1919, the plaintiff is in no better position than a common school district, for, until the effective date of that chapter, the board of education had nothing whatever to do with the custody and disbursement of the money used in the support and maintenance of the separate school in the city of Okmul-

56

gee. This was exclusively within the powers and duties of the board of county commissioners and county superintendent. It is now well settled that a common school district has neither authority nor control over the separate school maintained therein, and that there is no statute that authorizes it to receive or disburse funds belonging to such separate school, and that such common school district is not entitled to recover funds such as here sued for. School Dist. No. 7, Creek Co., v. Board of Co. Com'rs, 135 Okla. 1, 275 Pac. 292; Board of Co. Com'rs, Carter Co., v. School Dist. No. 71, Carter Co., 135 Okla. 248, 275 Pac. 302; Board of Co. Com'rs, Carter Co., v. School Dist. Nos. 36, 34 and 30, 135 Okla. 249, 275 Pac. 303; Board of Co. Com'rs, Wagoner Co., v. School Dist. No. 1, 137 Okla. 193, 279 Pac. 326.

So as to all funds claimed, alleged to have accrued prior to March 29, 1919, plaintiff was clearly not entitled to recover. What, then, were plaintiff's rights with reference to apportionments accruing after that date? Under the decisions of this court, plaintiff was entitled to receive such apportionments and disburse the same exclusively in the support and maintenance of the separate school maintained in the city of Okmulgee. Board Education, City of Sapulpa, v. Bd. Co. Com'rs, Creek Co., 127 Okla. 132, 260 Pac. 22.

From the testimony and agreed statements in the instant case, it clearly appears that plaintiff received and had all the benefits of all the apportionments involved. It is quite true that the county treasurer did not pay over to the treasurer of the plaintiff district the apportionments represented by the negro or separate scholastics at the time the county superintendent furnished him the apportionments, nor did the county superintendent draw his order on the county treasurer therefor as provided by section 10315, C. O. S. 1921. But the record does clearly disclose that when the apportionments were made by the county superintendent, the county treasurer, having custody of the money, in each instance, placed that part of the apportionment representing the separate scholastics of the district, along with that of other districts of the county, in the general fund, keeping a separate account thereof, designated as "Sep. Sch.," which was explained as meaning "separate school."

The board of education, in making up its financial statement and estimated needs each year, included these apportionments in estimating the income for the school district from sources other than ad valorem taxes. These sums, together with any surplus, were deducted from the total appropriations requested after adding the ten per cent. for delinquent taxes, and an ad valorem tax was levied by the excise board on all the taxable property of the county, sufficient, including the estimated income from state and county apportionments, to maintain the separate schools in the city of Okmulgee, together with all other separate schools of the county. A single levy, however, was made for the support of all the separate schools of the county.

Warrants were issued monthly by the board of county commissioners payable to the treasurer of plaintiff district to the full amount, if necessary, of the appropriations made, for the maintenance of the separate school. If all the funds thus raised were not used, the balance was carried forward as surplus available for the next year. These facts, we think, are clearly established by agreement of the parties, and the testimony of the county treasurer and the county clerk. This being true, we fail to see where it can be said that the county, or the county treasurer, failed to account for and pay over to plaintiff district all the money it was entitled to on account of apportionments due from negro or separate school enumerations.

It would appear that the suit was brought and the case prosecuted in the trial court upon the theory that the separate school maintained in the city was not entitled to the benefit of any part of the apportionment. Counsel for plaintiff in his opening statement so contended in the following language:

"Mr. Beckett: This suit is brought by the board of education of independent school district No. 1 to recover money withheld by the county, as stated in the petition, which belonged to that school district, independent school district No. 1. We claim that no part of it belongs to the separate school which is maintained in the district, but that all of it belongs to the school district itself."

This contention is untenable under all the decisions of this court involving actions of this nature. See Board of Co. Com'rs, Carter Co., v. School Dist. No. 19, Carter Co., 119 Okla. 20, 248 Pac. 324, wherein it was said:

"While there is a different method in assessing and collecting ad valorem taxes for the maintenance of the separate from the majority school, there is no provision of the statutes to indicate any difference in their relation to, or rights in, the gross production tax."

In that case apportionments from the gross production tax only were involved. See, also, Board of Education, City of Sapulpa,

v. Board Co. Com'rs, Creek County, 127 Okla. 132, 260 Pac. 22.

It is now contended that under section 3, art. 11, of the Constitution, common school districts are the ultimate units of distribution, and, therefore, a separate school, though established within the territorial limits of an independent district, cannot be taken into account in the distribution of these funds, and therefore, as stated in defendant's brief:

"Independent school district No. 1 was entitled to receive all of the money apportionable to it on that basis of distribution. The county officials withheld the amount sued for in this action, and placed it in the county general fund."

This contention, we think, is fully answered in Board of Education of City of Sapulpa v. Board of Co. Com'rs, Creek Co., supra, wherein atttention is called to the provisions of section 10322, C. O. S. 1921. which is held, in effect, to say that the formation of any separate school shall be construed to be the formation of a new school district with like effect as though such new district was formed in territory unorganized for school purposes.

This section, we think, means that, for the purpose of managing the schools (majority as well as minority schools), such separate schools are to be treated and regarded as common school districts. This construction brings the decisions holwing separate schools entitled to apportionment based upon their separate scholastics in harmony with section 3, art. 11, of the Constitution. This construction, we think, is a proper one. We have so held in Board of Co. Com'rs, Okmulgee Co., v. School District No. 25, Okmulgee Co., No. 18706, 141 Okla. 65, 283 Pac. 1008.

Plaintiff further contends that defendant is liable for the entire amount for the reason that the record shows that the county treasurer, in handling that part of the apportionments represented by the separate scholastics, placed the same in the general fund of the county and drew warrants against this fund in paying the money over to the treasurer of the board of education of plaintiff school district, and contends that, by thus handling apportionments, the county has used the same as a part of its general fund.

In support of its contention in this regard, plaintiff cites Going, Co. Treas., v. A., T. & S. F. Ry. Co., 88 Okla. 283, 213 Pac. 84, and Going, Co. Treas., et al. v. Carter Oil Co., 88 Okla. 222, 214 Pac. 922, and particularly that part of paragraph 2 of the syllabus in the latter case, wherein it is held:

"But the surplus in the common school fund and the estimated income of that fund from sources other than ad valorem tax should not be considered as surplus revenue of the county or estimated income of the county."

An examination of the two cases cited discloses that the court did not have before it the question here involved. In those cases a county levy for aid to common schools was involved. There the estimated needs of the county for the fiscal year showed a need for aid to common schools of $50,000. Under the head of "Estimated Income from Sources Other Than Ad Valorem Taxation," "common school fund" was listed, "state and county apportionments," in the aggregate, amounting to more than the $50,000 listed as needed for aid to common schools.

The county, in arriving at the amount of total levy necessary, deducted from the total county appropriations its surplus on hand and estimated income from all sources, other than ad valorem taxes, not including the amount on hand in the common school fund and the estimated income from state and county apportionments.

It was there held that the deductions made were proper, and that the money on hand in the common school fund, and the estimated income from state and county apportionments, were not to be considered as items of income of the county, and should not be deducted by the excise board from the total appropriations for the current expenses of the county in determining the amount to be raised by ad valorem tax, including the amount authorized by law to be levied in aid of common schools.

It was so held, and rightly, for the reason that these items of income did not belong to the county, but did belong to the common schools.

The proper place for deduction of the items of estimated income from state and county apportionment is in making up the budgets of the various school districts, because these items are, in fact, income of the several school districts and belong to them when collected and apportioned.

The record in this case shows that this is exactly what was done, and the plaintiff school district got exactly what it was entitled to, and is therefore not entitled to recover from the county. If the county treasurer had paid over to the plaintiff district, after 1919, all the state and county apportionments representing the separate

scholastic enumerations as received and apportioned, it would have been necessary under the law each year after 1919, for the board of education to use the money exclusively for the support and maintenance of the separate school, and report it as estimated income from sources other than ad valorem taxes in making up its financial statement and budget for the support and maintenance of such separate school, each year. The only irregularity shown is in the manner and time of payment; and we have held in Board of Education of the City of Muskogee v. Board of Co. Com'rs of Muskogee Co., 140 Okla. 229, 282 Pac. 670, that this mere irregularity is not sufficient to entitle the board of education to recover judgment for the money which the record so clearly shows it has already received.

For the reasons stated, the judgment should be reversed and the cause remanded, with directions to enter judgment for defendant.

BENNETT, HERR, LEACH, and JEFFREY, Commissioners, concur.

By the Court: It is so ordered.

Note.—See "Schools and School Districts," 35 Cyc. p. 822, n. 3; p. 847, n. 78.